No. 18,784.

EPHRAIM FREIGHTWAYS, INC. *v.* PUBLIC UTILITIES
COMMISSION OF THE STATE OF COLORADO, ET AL.
(347 P. [2d] 960)

Decided December 21, 1959.

Messrs. AKOLT, TURNQUIST, SHEPHERD & DICK, Mr. G.
M. WESTA, PAULINE NELSON, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

E. HICKEY, Deputy, Mr. ROBERT L. NAGEL, Assistant, for defendants in error Public Utilities Commission of Colorado and Robert C. Horton, John Thompson and Joseph P. Nigro, Commissioners.

Mr. T. A. WHITE, Mr. ERNEST PORTER, Mr. MARION R. SMYSER, for defendant in error Rio Grande Motor Way, Inc.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error as applicant and to defendants in error as the Commission or Motor Way.

Applicant is the owner of a permit issued by the Commission under which it carries on a contract, or private carrier, business. The said permit authorizes:

"Transportation of freight from and to Denver, Pueblo, and Colorado Springs, to and from Grand Junction, via U.S. Highways Nos. 85, 285, 24, 50, and 40, and Colorado Highway No. 91, and from and to said points to and from intermediate points on said highways, as follows: Leadville, Eagle, Gypsum, Glenwood Springs, Newcastle, Silt, Rifle, Grand Valley, DeBeque, Delta, Olathe, Montrose, and Gunnison (Decision No. 11823, May 6, 1938);

"Extended to include transportation of newspapers from Denver to any and all points on the routes presently authorized to be served (Decision No. 39117, July 24, 1952);

"Extended to include the pickup and delivery service of freight between points now authorized to be served and an area described as follows: the area lying within a radius of three miles of the city limits of Denver, Colorado as now located, excluding service to customers residing in Adams City and Littleton, Colorado, and also extended to include pickup and delivery of freight be-

tween points now authorized to be served and an area within a five-mile radius of Grand Junction, Colorado, (Decision No. 40339, April 27, 1953.)"

January 11, 1954, applicant petitioned the Commission for a conversion of his private, or contract, carrier permit, into a certificate of public convenience and necessity under which his operations would be expanded and conducted as a common carrier. Extended hearings were held by the Commission in Grand Junction, Montrose and Denver. These hearings began February 16, 1954, and were concluded January 14, 1955.

December 19, 1956, the Commission made findings, inter alia:

"That applicant herein has failed to prove public convenience and necessity for the proposed conversion of Private Permit No. A-494 into a certificate of public convenience and necessity, and the instant application should be denied."

Application for rehearing was denied and the order of the Commission, as above, became final. The district court in appropriate proceedings entered judgment upholding the action of the Commission. Applicant is before this court on writ of error to review the judgment.

During the extended hearings before the Commission 215 witnesses, other than officers and personnel of the applicant, gave testimony. Most of these witnesses were shippers or receivers of freight transported by motor vehicle. As stated by the Commission in its findings, those witnesses appearing in support of the applicant, " * * * were 54 of 74 witnesses at the Grand Junction hearing, 32 of the 52 witnesses at the Montrose hearing, and 73 of the 89 witnesses at the Denver hearing." In substance they testified concerning the need for the services supplied by applicant and their satisfaction therewith.

It appears from the evidence, without contradiction, that during the months covered by the hearings applicant had contracts with and was serving over one thousand separate customers per year, and that these cus-

tomers represented a wide variety of business enterprises. It is further uncontradicted that applicant operates over regular routes between fixed points named in its present permit, on regular schedules six days a week. The service of applicant is not limited to the transporting of any special or particular commodity, but includes all types of freight.

In denying applicant's request for a certificate of public convenience and necessity the Commission based its action on the proposition that a private carrier lawfully operating within its "Class A" authority cannot seek and obtain a conversion of its private operating authority to that of a common carrier by showing that its business has greatly increased and that its operations are such that the present and future public convenience and necessity will be served if the conversion is granted. This appears from the statement of the Commission taken from its findings, as follows:

" * * * In other words, the Commission believes that public convenience and necessity for the proposed conversion cannot be shown by the testimony of witnesses heretofore or now served adequately by the applicant in its capacity as a private or contract carrier. It is upon such testimony of the witnesses and its personnel that applicant based its case, and we cannot accept such testimony as proof of public convenience and necessity for the proposed conversion."

### Question to be Determined.

*Where an applicant before the Public Utilities Commission, presently operating under a Class A private carrier permit, seeks to become a common carrier; does evidence offered by witnesses presently satisfied with the private carrier service of applicant have probative force upon the question of public convenience and necessity when said evidence tends to establish the nature, extent, volume and general character of the business conducted by the applicant who seeks the conversion from a private carrier to a common carrier status?*

■ The question is answered in the affirmative. It is clear that the reasoning of the Commission in reaching a contrary conclusion was, that no matter how extensive the operations and services of a private carrier may be; how many customers it may be serving or how necessary and convenient the continued services of the carrier may be to its customers; the private carrier cannot establish public convenience and necessity for the services as a common carrier in terms of its existing operations, because its status and limited authority as a private carrier preclude it from proving the need for such service by its present customers. To deny the probative force of such evidence would be to fix an inflexible status quo in the field of transportation by common carriers without regard to what the actual public convenience and necessity may require.

[2] Every application by a private carrier for a certificate of public convenience and necessity must be determined by the Commission on its own individual merits, and consideration must be given to all competent evidence bearing upon the question of whether public convenience and necessity will be served by the granting of such application. Any applicant for a certificate, whether private carrier or otherwise, has the right to establish public convenience and necessity by any relevant evidence. The growth of the business of the private carrier in the instant case, the general nature of its business, the number of its customers, its gross tonnage, are all facts and circumstances having definite probative force and the Commission erred in refusing to consider it. As a practical matter the rule followed by the Commission, if adopted by this court, would effectively preclude a private carrier from ever converting its private authority into a certificate of public convenience and necessity as a common carrier, regardless of the individual merits of the case.

We consider the language of the Interstate Commerce Commission in *Ephraim Freightways, Inc., Common Car-*

*rier Application No. MC 116999,* 13 Fed. Carriers' Cases, paragraph 34,999 (decided December 29, 1958) to be particularly pertinent to the question here considered. From that decision we quote the following:

" " * * * Whether or not any of applicants' operations remain in intrastate commerce, as found by the board, nevertheless appropriate interstate authority is necessary to accomplish the service, and *we must consider the issue of public convenience and necessity.*

"We come then to the question whether applicant has established *its right to a certificate authorizing operations* which have been conducted, under some color of right, for a long period of time. Having failed to file a timely 'grandfather' application, *it is incumbent upon applicant to establish that such operations are required by the public convenience and necessity.* Applicant has shown that it and its predecessors have been transporting film over a lengthy period. These services have been conducted in the good faith belief that they were in intrastate commerce, and there is no evidence to warrant a finding of any deliberate intent by the carrier to perform unauthorized operations. Under such circumstances, these long continued operations, albeit without proper authority, are entitled to consideration along with other evidence of record, in determining whether a need has been shown for the proposed service. *Applicant is presently serving a number of shippers of film, and those shippers supporting the application express their satisfaction with the service and request its continuance.* It is clear that applicant was diligent in applying for appropriate authority as soon as it realized its present operations between Denver and Grand Junction might be considered interstate in character. *We believe that in the circumstances such prior operations constitute convincing evidence of a need for continuance of the service performed by applicant.* Since it participated in this traffic in the past and cannot be considered a new carrier entering the field, the granting of the ap-

plication will not alter the existing competitive situation." (Emphasis supplied.)

The judgment is reversed and the cause remanded to the trial court with directions to order such further proceedings by the Commission, and entry of findings by it, as shall be consistent with the views hereinabove expressed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur in the result.

MR. CHIEF JUSTICE KNAUSS and MR. JUSTICE HALL dissent.