No. 23653.

LEONARD DELUE, D. J. SEBERN, T. W. RINKER AND TED P. RINKER, D/B/A ARMORED MOTORS SERVICE AND THE CONTRACT CARRIERS' CONFERENCE OF THE COLORADO MOTOR CARRIERS' ASSOCIATION *v.* THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO; JOHN JOSEPH PERRY AND PAUL K. DIANDREA D/B/A PERRY TRANSFER COMPANY; AND B.D.C. CORPORATION OF COLORADO.

(454 P.2d 939)

Decided May 26, 1969. Rehearing stricken filed too late June 23, 1969.

160

HERBERT M. BOYLE, for plaintiffs in error Leonard De-Lue, D. B. Sebern, T. W. Rinker and Ted P. Rinker, d/b/a Armored Motors Service.

JOHN J. CONWAY, for plaintiff in error The Contract Carriers' Conference of the Colorado Motor Carriers' Association.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, ROBERT LEE KESSLER, Assistant, for defendant in error The Public Utilities Commission of the State of Colorado.

JONES, MEIKLEJOHN, KEHL & LYONS, LESLIE R. KEHL, DAVID E. DRIGGERS, for defendants in error John Joseph Perry and Paul K. DiAndrea d/b/a Perry Transfer Company and B.D.C. Corporation of Colorado.

*En Banc.*

Opinion by MR. JUSTICE DAY.

THIS case was commenced as a routine joint application before The Public Utilities Commission by Perry Transfer Company as seller and B.D.C. Corporation as buyer, seeking Commission approval of the sale and assignment of Perry's common carrier certificate of authority to haul general commodities.

In this writ of error not only is the P.U.C. decision to permit the transfer of the certificate challenged, but there is also presented the broad question whether a private carrier can as a matter of right and by entitlement as a matter of law intervene in a proceeding involving the transfer of a common carrier certificate.

The Commission ruled against the intervenors Armored Motors and Contract Carriers' Conference. The petition for intervention was denied and the Commission further ordered stricken from the proceedings the protests filed

by the private carrier intervenors. They bring this writ of error to a district court judgment affirming the Commission decision. We will refer to them as intervenors or by name. The other parties will be designated as Perry, the Commission and B.D.C.

I.

Touching first on the correctness of the Commission decision allowing the sale and transfer of the certificate, we hold the Commission decision was correct and affirm the judgment of the trial court upholding it.

The issues on the application for transfer were very limited. They involved the right of the applicant to sell its certificate which is by law deemed subject to transfer as any other property, although approval of the Commission is additionally required, and the fitness of the purchaser to succeed to the common carrier operation of the transferor.

In this case the Commission findings that the Perry Transfer Company was in good standing before the Commission and had been and was engaged in bona fide motor carrier operations under its operating rights is fully supported by the record. Additional findings were that B.D.C. was adequately financed and had additional financial resources at its command for adequate rendition of proper service under the certificate; that it intended to purchase additional equipment; that it would lease adequate office facilities, garage and parking facilities; and that its corporate officers and management personnel were experienced in the conduct of motor carrier general commodity transportation service and were fit and proper persons to conduct and manage the business. These findings as to fitness of the transferor also are supported by the evidence. These were the only material issues before the Commission. All other issues attempted to be raised by the intervenors were collateral and immaterial.

II.

The very content of the protest and proffered

evidence of Armored's contract operations demonstrated the correctness of the Commission's ruling in denying the request to intervene and in striking the protests.

The statute concerning the matter of intervenion in the P.U.C. proceeding is C.R.S. 1963, 115-6-9(1) which in pertinent part provides:

"At the time fixed for any hearing before the commission, any commissioner, or an examiner, * * *, the applicant, petitioner, complainant, the person, firm, or corporation complained of, such persons, firms or corporations as the commission may allow to intervene, and such persons, firms, or corporations as will be interested in or affected by any order that may be made by the commission in such proceeding, shall be entitled to be heard, examine and cross-examine witnesses, and introduce evidence."

 The statute contemplates two types of intervenors, (a) those which the Commission may permit to intervene, and (b) those who will be interested in or affected by any order that the Commission may make. In aid of and augmenting the statute the Commission, pursuant to the authority granted to it, can promulgate administrative rules of practice and procedure. Such rules relative to appearances by other than the parties have been adopted and published by the Commission. They read as follows:

"Rule 7(a) Rights of Parties. At any hearing, all parties * * * who are directly affected by the proceeding, shall be entitled to enter an appearance, to introduce evidence, examine and cross-examine witnesses, make arguments, and generally participate in the conduct of the proceeding."

"Rule 8(a) When Leave to Intervene Necessary. Persons not directly affected by the proceeding shall secure an order from the Commission granting leave to intervene before being allowed to participate."

\* \* \*

"Rule 8(d) When Petition May Be Granted. If an intervening petition shows substantial interest in the subject

matter of the proceeding or any part thereof and does not unduly broaden the issues, the Commission or the hearing officer may grant the prayer for leave to intervene and thereupon the intervenor shall become a party to the proceeding with respect to the matters set out in his intervening petition and may be subject to such reasonable conditions as may be prescribed."

After the application for transfer was filed, Armored and Conference petitioned the Commission for leave to intervene, apparently addressing their request to the discretion of the Commission. The petitions upon the filing thereof were granted by the Commission and both Armored and representatives of Conference did participate in the hearing. However, after it became apparent to the Commission that Armored and Conference were not limiting themselves to the issues of the right of Perry to sell and the fitness of B.D.C. to purchase and to succeed to Perry's general hauling business, the Commission found that Armored had shown no substantial interest in the subject matter and that its intervention would unduly broaden the issues before the Commission. Conference had no interest except to attempt to establish as a general proposition of law that any private carrier — for which it was the spokesman — could intervene as a matter of right in any common carrier proceeding.

Armored in this court takes the broader position that its intervention was not addressed to the discretion of of the Commission but should be allowed as a matter of right contending it would be and now is directly affected by the order of the Commission.

In support of its position Armored contends that it has a Class B private carrier certificate authorizing it to transport coin, currency, valuable papers and other commodities normally transported by armored car throughout the entire state. It contends that B.D.C. is a wholly owned Colorado subsidiary of Bankers Dispatch Corporation with headquarters in Chicago, Illinois, and that because the parent corporation and other subsidiary companies

are engaged in the business of transporting valuable commodities similar to Armored's operation, B.D.C. is likely to offer services in this field under the common carrier authority acquired from Perry. Thus, the only interest shown by Armored in the transfer and the only effect the Commission order and transfer would have upon Armored concerned the threat of competition if B.D.C. should use its general commodity authority to transport the same type of commodities as were being transported by Armored under its contract with various banking institutions in the city and state.

█ Under Colorado law a private carrier has no legal right to be protected from lawful competition from a common carrier. In fact, the converse is true. Prior to 1931 private carriers were not regulated in this state. In that year the Private Carrier Act was enacted by the legislature, C.R.S. 1963, 115-11-1 *et seq.*, as amended, authorizing the regulation of private carriers. This court has had occasion to review the propriety and legality of the regulation of private carriers in *McKay v. Public Utilities Commission,* 104 Colo. 402, 91 P.2d 965, wherein it was said:

"The legislative intent is clear, that the authorization of private carriers shall not be detrimental, within the limits of the law, to common-carrier operation. No permit as a private carrier can be granted by the commission if in its opinion, based upon proper evidence, such private-carrier operation impairs the efficient public service of an authorized common carrier serving the same territory or over the same highways or routes. All this indicates an intent to coordinate motor transportation in such a way as *to preserve common-carrier operation* and to not impair the integrity of state regulation of common-carrier service." (Emphasis added.)

\* \* \*

"A common carrier has the duty of giving adequate and sustained public service at reasonable rates, without dis-

crimination. Any failure in that respect makes it civilly liable * * *. A common carrier is held to the highest degree of care. The purpose of the legislative intent to protect the integrity of regulatory power over common carriers is therefore apparent. The exercise of regulatory power is primarily in the public interest. A greater degree of service is required from the common carrier; hence, the legislative direction that no permit to a private carrier should be granted if it impairs the efficient public service of an authorized common carrier."

In the recent case of *Public Utilities Commission v. Stanton Transportation Co.,* 153 Colo. 372, 386 P.2d 590, this court stated: "The flavor of the entire Act is to protect common carrier operations."

In contradistinction to the common carrier, the private carrier provides service at its convenience and subject to the negotiation of a satisfactory agreement for its services. Its protection is the contract it makes with its customer. If the contract is breached it has a remedy therefor. If the contract expires and the customer does not desire to renew it, it has no legal right to the business. Since it has no obligation to serve the public, it is not entitled to protection from competition. If the public convenience and necessity shows a need for the common carrier service, it is the public policy of the state that the common carrier is entitled to authority to serve that need.

Armored's contention that the decision violates its constitutional rights not to be injured in its business operation is answered in *Perkins v. Lukens Steel Co.,* 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108, wherein it was held that in the absence of statutory provisions reflecting a legislative purpose to protect certain competitive interests, an economic injury which results from lawful competition cannot in and of itself confer standing on the injured business.

 It follows that since Armored has no right to protection from competition by Perry or its successors in interest it has no legal interest or right which it can assert in a proceeding involving the transfer of a common carrier certificate. See *San Miguel Power Association v. Public Service Commission,* 4 Utah 2d 252, 292 P.2d 511.

### III.

 An additional string to Armored's bow is the contention that it was error not to enter an order, along with the approval of the transfer, limiting B.D.C.'s authority to the transportation service shown to be primarily provided by Perry. It was contended by Armored that Perry since it acquired its certificate, had primarily transported refrigerators, stoves, ovens, television sets, washing machines, dryers and furniture of all varieties, household goods and accessories, kitchen cabinets, air conditioners and numerous other items and that the transferee should be limited to like items and nothing more.

The Commission — correctly in our opinion — refused to fragmentize the general commodity certificate transferred. The evidence and the findings of the Commission which are supported by the record show that Perry has carried on the business of hauling a broad range of commodities and that it has accepted all freight tendered to it within the scope of its operating authority and has participated in the general commodity tariffs. Generally speaking, the Commission should not on transfer impose commodity restrictions when a bona fide motor carrier operation is being carried on by the transferor at the time of the transfer. See *U.S. v. Carolina Freight Carriers Corp.,* 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971. The evidence was that B.D.C. intended to continue without interruption the business Perry Company had been traditionally carrying on; that under its certificate it would accept and carry any and all commodities requested by

the shipping public, whether large or small; and also, that it intended to purchase additional equipment to meet any additional business generated.

The judgment is affirmed.

Mr. Justice Kelley not participating.