RAM BROADCASTING OF COLORA-
DO, INC., a Colorado corporation,
Petitioner-Appellant,

v.

PUBLIC UTILITIES COMMISSION of
the State of Colorado and Commission-
ers Edythe S. Miller, Daniel E. Muse
and Andra Schmidt, Contact-Colorado
Springs, Inc. and its successor, Contact
Communications, Inc., Respondents-
Appellees.

No. 84SA225.

Supreme Court of Colorado,
En Banc.

July 8, 1985.

William Andrew Wilson, William Andrew Wilson, P.C., Denver, Martin J. Schwartz, Rubin Baum Levin Constant & Friedman, New York City, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mark Bender, Asst. Atty. Gen., Regulatory Law Section, Denver, for the Public Utilities Com'n of Colorado and Commissioners thereof.

Jeffrey C. Pond, Cohen, Brame & Smith, Denver, for Contact Communications, Inc.

DUBOFSKY, Justice.

RAM Broadcasting of Colorado, Inc. (RAM) appeals a Denver district court order affirming the denial by the Public Utilities Commission (PUC) of RAM's application for a certificate of public convenience and necessity[1] to operate a one-way interconnected paging service[2] in the Colorado Springs and Pueblo metropolitan areas, and in a wide area extending along the I–25 corridor from Denver to Pueblo. We affirm.

RAM filed its application with the PUC in May 1980, asserting that there was an unmet need for its paging services in Pueblo and Colorado Springs, and along the I–25 corridor. Contact-Colorado Springs, Inc. (Contact),[3] a radio common carrier that operates one-way paging services in Colorado Springs, filed the only protest to RAM's application. Contact maintained that it and other existing carriers could meet any need for interconnected paging services in the area outlined in RAM's application. After several postponements, the hearing on RAM's application began September 28, 1981, and continued intermittently until March 9, 1982. In addition to RAM corporate witnesses who testified that the company had the financial and engineering ability to provide the services proposed in its application, RAM presented sixty-six public witnesses who testified about the inadequacy of existing paging service and their need for the services proposed by RAM.

In the past, all one-way paging systems in Colorado have been "tone-only," which gives a paging customer the limited information available from a one- or two-tone signal, or "tone-voice," which allows the paging customer to receive a short verbal message in addition to the tone signal. RAM proposed to offer its customers the new technology of a "digital" paging system, allowing the paging customer to receive on a pager with a lighted window a ten-digit display, typically a telephone number and a three-digit coded message. RAM's public witnesses expressed their desire for digital paging and their dissatisfaction with certain inherent drawbacks in tone-only and tone-voice paging, and complained of the inadequacy of paging services presently available in Colorado Springs and Pueblo and along the I–25 corridor from Denver to Pueblo. Contact presented testimony that Contact and Radio Contact Corporation were supplying or would soon

---

1. Section 40–15–107(2), 17 C.R.S. (1984), requires every provider of intrastate telecommunications service to obtain a certificate of public convenience and necessity from the PUC, based on a PUC finding that public convenience and necessity require. or will require the service.

2. "Interconnected" paging service is distinguished from "manual" paging service, which is not regulated by the PUC. Manual paging requires someone who wishes to contact a paging customer to call an operator employed by the paging company, who then contacts the customer. Interconnected paging involves no operator, because each customer is assigned a separate telephone number that, when dialed, automatically pages the customer. Because of its direct interconnection with telephone lines, interconnected paging is regulated by the PUC. "One-way" paging is distinguished from two-way communication because the paging customer cannot respond to the person who contacts him.

3. Before the issuance of the final PUC decision in this proceeding, Contact-Colorado Springs, Inc. merged with its sister corporation, Contact-Denver, Inc., to form Contact-Colorado, Inc. The corporate name was later changed to Contact Communications, Inc. In this opinion, all of the successive corporations will be referred to as "Contact".

supply digital display paging in Pueblo, Colorado Springs, and the area in between.

The hearing examiner recommended that the PUC deny all portions of RAM's application. RAM filed exceptions to the recommended decision, and the PUC denied the exceptions, adopting the hearing examiner's recommended decision in full. RAM requested review of the PUC decision in Denver district court under section 40-6-115, 17 C.R.S. (1984), which provides statutory authority for review of PUC decisions under a writ of certiorari. The district court affirmed the PUC's decision in all respects.

RAM now appeals the district court decision, maintaining that Contact did not have standing to protest any portion of RAM's application other than the request for authority to operate in Colorado Springs and that the PUC acted arbitrarily and capriciously in denying RAM's application. Because the resolution of the standing question affects the rest of the case, we address that issue first.

I.

 RAM objected to Contact's participation throughout the proceedings except to the extent that Contact protested RAM's request for authority to operate in Colorado Springs. RAM asserts that Contact had no standing to protest the other portions of RAM's application because Contact operated only in Colorado Springs and therefore had no interest that could be affected by RAM's application to operate in Pueblo or in a wide area along the Front Range. In support of its contention, RAM quotes the Colorado rule on standing first enunciated in *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). Standing to pursue a lawsuit in Colorado depends upon whether the plaintiff has suffered an actual injury and whether the injury suffered is to a legally protected or cognizable interest. *Id.; Denver Center for the Performing Arts v. Briggs*, 696 P.2d 299, 304 (Colo. 1985); *Marco Lounge, Inc. v. City of Federal Heights*, 625 P.2d 982 (Colo.1981); *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission*, 620 P.2d 1051 (Colo. 1980). However, standing to participate in a PUC proceeding, delineated by statute and rule, differs from standing to bring a lawsuit.

Section 40-6-109, 17 C.R.S. (1984), provides that in hearings before the PUC, such persons, firms, or corporations as the commission may allow to intervene, and such persons, firms, or corporations as will be interested in or affected by any rule or order that may be made by the commission in such proceeding, and who shall become parties to the proceeding, shall be entitled to be heard, examine and cross-examine witnesses, and introduce evidence.

This provision creates two classes that may participate in PUC proceedings: those who may intervene as of right and those whom the PUC permits to intervene. *DeLue v. Public Utilities Commission*, 169 Colo. 159, 454 P.2d 939, *cert. denied*, 396 U.S. 956, 90 S.Ct. 428, 24 L.Ed.2d 421 (1969). Under the statute, the PUC has promulgated rule 7A.2., 4 C.C.R. 723-1 (1980), limiting persons whom it will permit to intervene to those having "a substantial personal interest in the subject matter of the proceedings [whose] intervention will not unduly broaden the issues."

 RAM filed a single application with the PUC for a certificate of public convenience and necessity that would extend to the three areas designated in its application. RAM's engineering consultant testified that he would have to rework completely the engineering for the proposed paging system if only a portion of RAM's application were granted, implying that the application was for a single, extensive paging system. Contact's interest would be affected by a PUC grant of RAM's application, because a grant would allow additional competition for the paging business in Colorado Springs. Therefore, Contact was an intervenor as of right in the entire hearing held on RAM's application. Even if Contact were not an intervenor as of right, however, the PUC granted Contact permission to participate in the proceeding, and

Contact was entitled to participate as a permissive intervenor throughout the hearing under the statute and the rule promulgated by the PUC. We conclude that Contact had standing to protest all portions of RAM's application and to participate in the entire hearing.

## II.

■ RAM maintains that the PUC erred in finding that RAM had not met its burden of establishing the inadequacy of present paging services and the inability of existing paging services to accommodate public needs.[4] RAM implies that the sheer number of public witnesses it produced created a prima facie case, despite the hearing examiner's careful analysis of the degree to which the witnesses' testimony demonstrated the inadequacy of present services.

■ The PUC must consider the testimony of all witnesses appearing before it, *Ephraim Freightways, Inc. v. Public Utilities Commission,* 141 Colo. 330, 347 P.2d 960 (1959), but the number of witnesses testifying for a given proposition does not force the PUC to reach a particular result on that issue. *Kuboske v. Public Utilities Commission,* 187 Colo. 38, 40, 528 P.2d 248, 249 (1974). The PUC decides what weight to give to the evidence and determines the credibility of the witnesses. *Mellow Yellow Taxi Co. v. Public Utilities Commission,* 644 P.2d 18, 20 (Colo.1982); *Morey v. Public Utilities Commission,* 629 P.2d 1061, 1068 (Colo.1981). An applicant for a certificate of public convenience and necessity must demonstrate that existing services are *substantially* inadequate to meet public needs because "the test of inadequacy is not perfection" and some legitimate complaints will arise regarding any common carrier that provides service to many customers. *Ephraim Freightways, Inc. v. Public Utilities Commission,* 151 Colo. 596, 603, 380 P.2d 228, 232 (1963);

*Contact-Colorado Springs, Inc. v. Mobile Radio Telephone Service, Inc.,* 191 Colo. 180, 183, 551 P.2d 203, 205 (1976).

■ Section 40–6–115, 17 C.R.S. (1984), limits court review of PUC decisions to a determination of whether the PUC has regularly pursued its authority, whether its decision is just and reasonable, and whether the evidence supports its conclusions. *City of Montrose v. Public Utilities Commission,* 629 P.2d 619 (Colo.1981); *Contact-Colorado Springs,* 191 Colo. at 183, 551 P.2d at 204–05; *Mountain States Telephone & Telegraph Co. v. Public Utilities Commission,* 182 Colo. 269, 513 P.2d 721 (1973). The reviewing court may not substitute its judgment for that of the PUC, but must determine only whether there is competent evidence in the record to support the PUC decision. *Mellow Yellow Taxi,* 644 P.2d at 20; *Atchison, Topeka & Santa Fe Railway Co. v. Public Utilities Commission,* 194 Colo. 263, 572 P.2d 138 (1977). The evidence must be viewed in the light most favorable to the PUC's findings. *Morey,* 629 P.2d at 1068; *see Peoples' Natural Gas Division v. Public Utilities Commission,* 193 Colo. 421, 427, 567 P.2d 377, 381 (1977). We consider separately whether the evidence produced as to each aspect of the paging service proposed by RAM supported the decision of the PUC.

## A.

■ Several of RAM's witnesses testified that they experienced problems with the tone-voice and tone-only paging services available in Colorado Springs and Pueblo. RAM's expert engineering witness then testified that the complaints expressed by these public witnesses indicated that existing paging systems in Colorado Springs and Pueblo were substantially inadequate. The hearing examiner admitted the engineering expert's testimony into evidence, but then assigned the expert's opin-

---

**4.** As enunciated in *Contact-Colorado Springs, Inc. v. Mobile Radio Telephone Service, Inc.,* 191 Colo. 180, 183, 551 P.2d 203, 205 (1976), the doctrine of regulated monopoly requires an applicant for a certificate of public convenience

and necessity to show that the proposed services will not duplicate existing services and that existing service is substantially inadequate to meet the public need.

ion no weight, because the expert was unable to analyze or classify the various complaints made by witnesses and the complaints that had been corrected by the existing paging services. The hearing examiner found that the expert failed to show that he had applied the "substantially inadequate" standard to arrive at his opinion. RAM protests the refusal to give any weight to the expert's opinion, but a decision as to the weight to be placed on particular testimony is uniquely within the province of the PUC, and this court will not substitute its judgment for that of the PUC. *Morey*, 629 P.2d at 1068; *Mellow Yellow Taxi*, 644 P.2d at 20.

RAM asserts that the testimony of its public witnesses was sufficient to establish a prima facie case of the inadequacy of existing paging services, and that therefore Contact had the burden of rebutting RAM's evidence. The PUC, however, held that RAM did not show the inadequacy of the existing services. The hearing examiner's recommended decision included an exhaustive breakdown of the complaints expressed by witnesses, detailing which of the complaints were inherent in the use of tone-voice paging (such as the disturbance caused by a voice pager during meetings or the inconvenience of writing down a phone number received over a voice pager while driving) and the extent to which complaints were rectified when customers brought their problems to the attention of the paging company. The hearing examiner concluded that there was a certain amount of dissatisfaction with paging services in Colorado Springs and Pueblo, but that the existing services were improving their systems and that some dissatisfaction was inevitable with a common carrier serving thousands of customers. Therefore, the examiner concluded that RAM had not established that existing paging services were substantially inadequate.

▆▆▆▆ This case is similar to *Ephraim Freightways*, 151 Colo. 596, 380 P.2d 228, in which an existing carrier rebutted the testimony of some witnesses who expressed their dissatisfaction with existing common carrier services. Although some complaints about existing service remained unrebutted, the court upheld the PUC's denial of the common carrier application. The court affirmed the PUC's findings that a normal amount of customer dissatisfaction can be expected with common carrier service and that the applicant had not met his burden of showing existing service to be substantially inadequate. 151 Colo. at 603, 380 P.2d at 232. In the present case, the PUC considered all of the evidence comprising thousands of pages of testimony and concluded that RAM had not met its burden of showing that present service was substantially inadequate. Substantial inadequacy is a factual question to be determined by the PUC. The evidence supports the PUC's conclusion that existing service was not shown to be substantially inadequate, and we will not disturb that conclusion.

### B.

▆▆▆▆ RAM next asserts that the testimony of its public witnesses demonstrated a need for a wide-area paging service along the Front Range from Pueblo to Denver. The PUC concluded that the testimony did not demonstrate the inadequacy of existing service. Some witnesses testified that Mountain Bell's tone-only paging service available along the Front Range was adequate for their needs. Contact and other carriers had been authorized to provide wide-area paging over portions of the Front Range area. The PUC's conclusion that existing wide-area paging was adequate to serve the public need is based on competent evidence, and therefore we must uphold the PUC ruling.

▆▆▆▆ The PUC also found that the applicant's proposal did not include engineering information for one of the tower facilities necessary to provide continuous paging from Colorado Springs to Denver, and that RAM did not intend to install this tower until its second year of operation. These findings are sufficient to support a conclusion that RAM had not established its ability to meet the public need for wide-area

paging.[5] Therefore, we affirm the denial of RAM's application for wide-area paging.

### C.

The overriding theme expressed by RAM's public witnesses was that they liked the concept of digital paging, which had first been explained to them by RAM, and that they would prefer digital paging to tone-voice or tone-only paging. Contact presented evidence in rebuttal that digital paging was already available in Pueblo from Radio Contact Corporation and that Contact would provide digital display paging in Colorado Springs in the spring of 1982. The president of Contact testified that Contact pursued the introduction of digital paging as soon as equipment to modify its old facilities became available and Contact could make a reasoned business judgment about what equipment to acquire. RAM's engineering expert stated that the first digital paging service in the country became operable in June 1981 in New York City and the surrounding suburban areas. Therefore, the effect of the witnesses' testimony was that digital display paging would be provided by existing carriers in the areas that RAM proposed to serve [6] within one year of the establishment of the first digital paging system in the country. This evidence supports the PUC's conclusion that RAM did not carry its burden of demonstrating that existing carriers were unable or unwilling to meet the public need for digital display paging. *See Answerphone, Inc. v. Public Utilities Commission*, 185 Colo. 175, 522 P.2d 1229 (1974).[7]

Because there is competent evidence in the record to support the findings and conclusion of the PUC that RAM failed to establish the substantial inadequacy of existing services and the public need for its own services, this court will not overturn the district court ruling upholding the PUC's findings and conclusions.

Judgment affirmed.

---

5. Another point raised by Contact, but not addressed in the PUC decision, is that RAM's engineering exhibit that indicated the reliable areas of paging service under the proposed system did not cover the entire area designated for wide-area service on the map that the public witnesses used to testify about their paging needs. Therefore, RAM did not establish its ability to provide paging in the entire area over which wide-area paging might be needed. RAM's engineering expert stated that a management decision had been made to provide reliable paging over the entire area outlined on the map that the public witnesses used, but the expert did not discuss how this would be done. Under these conditions, it is not surprising that the PUC concluded that RAM could not meet the public need testified to by RAM's public witnesses.

6. Contact did not prove that existing carriers would provide wide-area digital paging, but the adequacy of existing carriers' wide-area digital paging was moot because RAM failed to prove its ability to provide wide-area paging.

7. RAM argues that cases from other jurisdictions hold that existing carriers should not be allowed to improve or expand their own services in order to foreclose the grant of a certificate to a new carrier. *See ITT World Communications, Inc. v. Federal Communications Commission*, 595 F.2d 897 (2d Cir.1979); *Statesboro Telephone Co. v. Georgia Public Service Commission*, 235 Ga. 179, 219 S.E.2d 127 (1975); *In re Powell*, 358 A.2d 522 (Me.1976). In fact, in all these cases the regulatory agencies involved had granted authority to a new carrier, and the courts held that the agencies acted within their discretion by granting authority when there was only a possibility that existing carriers could improve existing service. None of the cases holds that an agency may not consider prospective improvement and expansion of existing service in determining whether existing service is adequate, and *ITT World Communications*, 595 F.2d at 903, and *Statesboro Telephone*, 219 S.E.2d at 131, require agencies to consider evidence regarding improved service. In Colorado, this court has approved the PUC holding that an applicant must prove that existing carriers are unable or unwilling to meet new demonstrated public needs. *See Answerphone*, 185 Colo. 175, 522 P.2d 1229.