**YELLOW CAB COOPERATIVE ASSOCIATION d/b/a Yellow Cab, Inc. and Denver Airport Limousine Service, Inc., Petitioners–Appellants,**

**v.**

**The PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO; Commissioners Robert E. Temmer, Gary L. Nakarado, and Christine E.M. Alvarez, Individual Commissioners Thereof; Colorado PUC No. 191 Corp., Inc., Respondents–Appellees.**

**No. 92SA500.**

Supreme Court of Colorado,
En Banc.

Feb. 28, 1994.

---

Richard J. Bara, Denver, for petitioners-appellants.

No appearance by The Public Utilities Com'n of the State of Colo.

Ireland, Stapleton, Pryor and Pascoe, Mark W. Williams, Richard A. Nielson, Denver, for respondent-appellee Colorado PUC No. 191 Corp., Inc.

Justice KIRSHBAUM delivered the Opinion of the Court.

Petitioners-appellants, Yellow Cab Cooperative Association d/b/a Yellow Cab, Inc., and Denver Airport Limousine Service, Inc. (hereafter collectively referred to as Yellow Cab), appeal a judgment of the District Court in and for the City and County of Denver affirming an order entered by respondent-appellee Public Utilities Commission (PUC).[1] The PUC granted an application filed by respondent-appellee Colorado PUC No. 191 Corp., Inc. (191 Corp.) to alter the terms of a certificate of public convenience and necessity held by 191 Corp. Yellow Cab asserts that the district court erroneously affirmed the PUC's decision denying Yellow Cab's request to intervene and participate in the administrative proceedings. We agree with Yellow Cab and therefore reverse and remand with directions.

I

Prior to February 1991, Yellow Cab and 191 Corp. operated limousine services between the City and County of Denver, Colorado, and Stapleton International Airport, also located in Denver. Yellow Cab operated its service as authorized by PUC certificate of public convenience and necessity No. 2778 & I. This certificate, issued pursuant to section 40–10–105(1), 17 C.R.S. (1993), contained the following description of Yellow Cab's authority:

TRANSPORTATION—IN SCHEDULED AND CALL AND DEMAND LIMOU-SINE SERVICE—OF PASSENGERS AND THEIR PERSONAL BAGGAGE FROM AND TO THE AIRPORT TERMINAL BUILDING AT STAPLETON INTERNATIONAL AIRPORT IN DENVER, COLORADO TO AND FROM: [hotels, motels, bus and railway stations within a prescribed geographic area centered in downtown Denver].

---

1. Our jurisdiction is based on § 40–6–115(5), 17 C.R.S. (1993).

Yellow Cab's authority was restricted "to the use of vehicles having a seating capacity of twenty (20) or less excluding the driver." Yellow Cab was at that time the only carrier with authority to provide limousine service in its authorized area by means of vehicles with a seating capacity of more than twelve passengers.

191 Corp. operated a similar service pursuant to PUC certificate of public convenience and necessity No. 45269. That certificate described 191 Corp.'s authority as follows:

TRANSPORTATION—ON SCHEDULE—OF PASSENGERS AND THEIR BAGGAGE BETWEEN STAPLETON INTERNATIONAL AIRPORT IN DENVER, COLORADO, ON THE ONE HAND, AND ALL POINTS LOCATED WITHIN A ONE–MILE RADIUS OF COLFAX AND BROADWAY IN DENVER, COLORADO, ON THE OTHER HAND.

The certificate issued to 191 Corp. also contained the following express condition:

THIS CERTIFICATE IS RESTRICTED TO THE USE OF VEHICLES WITH A PASSENGER CAPACITY OF NOT LESS THAN NINE PASSENGERS INCLUDING THE DRIVER, NOR MORE THAN 12 PASSENGERS, EXCLUDING THE DRIVER.

Thus, while both Yellow Cab and 191 Corp. were authorized to perform scheduled limousine service from portions of Denver to Stapleton International Airport, 191 Corp. could not utilize vehicles capable of transporting more than twelve passengers for this purpose.

On February 21, 1991, 191 Corp. filed an application with the PUC requesting that the conditions contained in its certificate be altered to permit 191 Corp. to utilize vehicles capable of transporting up to thirty-two passengers. Yellow Cab and two other entities filed requests to intervene in the proceeding as affected carriers, pursuant to section 40–6–109(1), 17 C.R.S. (1993).[2] Yellow Cab contended that it had been granted exclusive authority to provide scheduled airport transportation in vehicles seating up to twenty persons and that the requested expansion of 191 Corp.'s authority would impermissibly authorize 191 Corp. to compete directly with Yellow Cab's existing service, to the detriment of Yellow Cab and the public. Yellow Cab also asserted that public convenience and necessity would not be served by granting 191 Corp.'s request and that in the absence of a finding that its existing service was inadequate, Colorado's doctrine of regulated monopoly prohibited the PUC from granting the request.

191 Corp. filed a Motion to Strike or Dismiss Intervention. The administrative law judge (hereafter ALJ) assigned to the proceeding granted the motion, concluding that 191 Corp. in effect sought only to do in one vehicle what it was already permitted to do in two or more vehicles. The ALJ determined that the requested expansion of 191 Corp.'s authority would not constitute a new service. The ALJ also concluded that the only issue raised by 191 Corp.'s application was whether allowing increased vehicle size would increase the efficiency of 191 Corp.'s operations and thereby allow for better service to the public. On the basis of these determinations, the ALJ concluded that Yellow Cab had no standing to intervene because its interests would not be substantially affected if 191 Corp.'s application were granted.

Yellow Cab filed exceptions to the ALJ's dismissal of the request to intervene. The PUC referred the exceptions to the ALJ, who denied them. After conducting a hearing during which Yellow Cab was not permitted to introduce evidence or otherwise participate, the ALJ entered an order recommending that 191 Corp.'s application be granted because the use of larger vehicles would enable the company to operate more efficiently.

The PUC adopted the ALJ's recommendation on December 4, 1991, by a divided vote.[3] The majority concluded that 191 Corp.'s application sought no significant change in the company's authority, that increasing the efficiency of any carrier generally benefits the

---

2. The other two entities are not parties to this appeal.

3. The PUC is composed of three members. § 40–2–101, 17 C.R.S. (1993).

public, and that to permit intervention by Yellow Cab "under some remote theory of hypothetical damage to an existing carrier" would encourage unnecessary litigation. The majority also concluded that Yellow Cab in effect was interested only in preventing more efficient operation by 191 Corp., an interest the majority deemed "not worthy of legal protection." One commissioner dissented, concluding that the majority's decision violated the PUC's liberal intervention policy and excluded evidence that was relevant to the determination of the issues raised by 191 Corp.'s application. Yellow Cab filed a request for rehearing, which was denied.

Yellow Cab appealed the PUC's order to the district court pursuant to section 40–6–115(1), 17 C.R.S. (1984).[4] The district court affirmed the PUC's decision, holding that no interest of Yellow Cab was affected by 191 Corp.'s application. In so doing, the district court made the following observations:

> No new service or extension of operating rights was sought. 191 Corp. already had authority to conduct scheduled limousine service between Stapleton International Airport and Downtown Denver. 191 Corp. did not seek to change the type of service performed (scheduled limousine), the type of transportation (passenger), or the geographic area to be served. 191 Corp. simply sought the ability to perform in one larger vehicle what it could already perform with two or more vehicles which carried 9 to 12 passengers.

Yellow Cab has appealed the district court's judgment, asserting that the PUC erred in denying its request to intervene.

## II

■ Yellow Cab asserts that the PUC erred in granting the application of 191 Corp. for expanded services without permitting

Yellow Cab to intervene and to present evidence establishing the adequacy of Yellow Cab's existing service. Under the circumstances of this case, we agree.

## A

■ We have previously recognized that the power of the PUC to license and regulate motor vehicle passenger carriers is based on principles associated with the doctrine of regulated monopoly.[5] *Ephraim Freightways, Inc. v. Public Utils. Comm'n,* 151 Colo. 596, 599, 380 P.2d 228, 230 (1963). *See also Colorado Transp. Co. v. Public Utils. Comm'n,* 158 Colo. 136, 142, 405 P.2d 682, 685 (1965) (*Colorado Transp. II* ). Under this doctrine, applications for authority to operate a motor vehicle service require a showing that the public convenience and necessity require such service. *Colorado Transp. II,* 158 Colo. at 142–44, 405 P.2d at 685–87. However, a finding of public convenience and necessity is not justified unless the existing service is determined to be substantially inadequate. *Id.,* 158 Colo. at 143–44, 405 P.2d at 686 (quoting *Ephraim,* 151 Colo. at 603, 380 P.2d at 232). In *Ephraim,* we made the following observations illustrative of these principles:

> The question involved in the granting or denial of a Certificate of Public Convenience in a particular area is not whether the extent of business in a particular area is sufficient to warrant more than one certified carrier ... but rather whether public convenience and necessity demand the [additional service].... While it may be more convenient for [the public users of the service] if there be another service added to the area, this alone is not enough and there must also be a necessity for such service shown by the inadequacy of the existing service.

4. Yellow Cab's petition for certiorari was filed on February 13, 1992, prior to amendments to § 40–6–115(1), adopted by the General Assembly effective July 1, 1992, and July 1, 1993, respectively. Ch. 302, Sec. 3, § 40–6–115(1), 1992 Colo.Sess.Laws 2129, 2131; Ch. 335, Sec. 21, § 40–6–115(1), 1992 Colo. Sess.Laws 2056, 2065–66.

5. While the legislature adopted a system of "regulated competition" with respect to common carriers in 1967, *see Miller Bros., Inc. v. Public Utils. Comm'n,* 185 Colo. 414, 525 P.2d 443 (1974) (discussing the meaning of regulated competition and the adoption by the legislature of this exception, which is currently codified at § 40–10–105(2), 17 C.R.S. (1993)), motor vehicle passenger carriers such as those in this case are still governed by the doctrine of regulated monopoly.

*Ephraim,* 151 Colo. at 599–600, 380 P.2d at 231.

Section 40–10–105(1), which statute establishes the authority of the PUC, contains the following pertinent language:

> The commission has the power to issue a certificate of public convenience and necessity to a motor vehicle carrier or to issue it for the partial exercise only of the privilege sought and may attach to the exercise of the rights granted by said certificate such terms and conditions as, in its judgment, the public convenience and necessity may require.

§ 40–10–105(1), 17 C.R.S. (1993). This statute authorizes the PUC to grant limited authority to a motor vehicle carrier [6] to provide service in a particular area by imposing conditions on the carrier's conduct. However, limitations may be included in a PUC certificate pursuant to section 40–10–105(1) only if determined by the PUC to be required for the public convenience and necessity. Therefore, such limitations necessarily constitute a critical component of the authority granted to a carrier.

■ From this perspective, two or more carriers authorized to provide what appear to be substantially similar services in the same area must be viewed as providing different services to the extent their respective certificates contain different terms or conditions. Any change in the terms and conditions initially imposed on one carrier's authority that results in improvement of that carrier's competitive position in the same market necessarily effects a change in the competitive structure previously determined by the PUC to be required by the public convenience and necessity. Any such change, therefore, may be authorized only if the applicable statutory criteria are satisfied. *See Public Utils. Comm'n v. Donahue,* 138 Colo. 492, 502, 335 P.2d 285, 290 (1959) (PUC's right to amend a previous order does not authorize granting an amendment that permits services precluded by the initial certificate unless provisions of statute are satisfied). *See also Colorado Transp. II,* 158 Colo. at 136, 405 P.2d at 682 (fact that carrier needs authorization for use of larger vehicles for business reasons does not warrant grant of such authority if the public can obtain such service from another carrier and applicant failed to show that the existing alternative service was inadequate).

**B**

■ A regulated carrier's standing to challenge a competitor's application to modify the latter's PUC operating restrictions is governed by section 40–6–109(1), 17 C.R.S. (1993). This statute authorizes any person "interested in or affected by" any order that may be entered in a proceeding before the PUC to examine and cross-examine witnesses and to introduce evidence.[7] By according standing to intervene in PUC proceedings to persons "affected by" such proceedings, the General Assembly has established a standard that is more inclusive than the legal interest test adopted by this court to determine whether plaintiffs have standing to pursue civil litigation. *See, e.g., Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977) (determination of plaintiff's standing to maintain

---

**6.** Section 40–10–101(4)(a), 17 C.R.S. (1993), contains the following definition of a "motor vehicle carrier":

> [E]very person, lessee, trustee, receiver, or trustee appointed by any court whatsoever owning, controlling, operating, or managing any motor vehicle used in serving the public in the business of the transportation of persons or property. . . .

**7.** Section 40–6–109 states in pertinent part as follows:

> (1) At the time fixed for any hearing before the commission, any commissioner, or an administrative law judge, or, at the time to which the same may have been continued, the applicant, petitioner, complainant, the person, firm, or corporation complained of, and such persons, firms, or corporations as the commission may allow to intervene and such persons, firms, or corporations as will be interested in or affected by any order that may be made by the commission in such proceeding and who shall have become parties to the proceeding shall be entitled to be heard, examine and cross-examine witnesses, and introduce evidence. A full and complete record of all proceedings had before the commission, any commissioner, or an administrative law judge in any formal hearing had, and all testimony, shall be taken down by any reporter appointed by the commission, and all parties in interest shall be entitled to be heard in person or by attorney.

§ 40–6–109(1), 17 C.R.S. (1993).

civil action requires determination of whether the plaintiff has suffered injury in fact to a legally protected interest resulting from asserted wrong). *See also RAM Broadcasting of Colorado, Inc. v. Public Utils. Comm'n*, 702 P.2d 746, 749 (Colo.1985) (citing *Wimberly* ); *Cloverleaf Kennel Club, Inc. v. Colorado Racing Comm'n*, 620 P.2d 1051, 1055–56 (Colo.1980) (citing *Wimberly* ). Yellow Cab's interest in its own certificate and in providing the limousine service thereby authorized in such manner as to adequately serve the public convenience and necessity satisfied the statutory requirement.

191 Corp. argues that the PUC correctly concluded that Yellow Cab has no legitimate interest in preserving restrictions previously imposed on 191 Corp. which in effect protect Yellow Cab's competitive position. As presented, this argument overlooks the fundamental principle of the doctrine of regulated monopoly that a competitive advantage is granted because the public convenience and necessity so warrants. Yellow Cab's own authority thus not only constitutes an economic advantage but also reflects the PUC's determination that the public interest is adequately served by that economic advantage.

We recognized this aspect of the regulated monopoly doctrine in *Donahue*, wherein we offered the following comment:

> [Although] the PUC has wide discretionary powers in determining the demands of "public convenience and necessity" ... a [regulated carrier] serving the public under a certificate of public convenience and necessity is a part of the public, and public convenience and necessity requires that [it] be treated fairly and that no new or extended operations be authorized which endanger or impair the operations of existing carriers contrary to the public interest.

*Donahue*, 138 Colo. at 498, 335 P.2d at 288. In *Donahue*, we also noted that limitations in a PUC certificate on the passenger-carrying capacity of a taxicab company's vehicles were "integral parts of the certificates of public convenience and necessity ... imposed to prevent the holders thereof from competing with and rendering the scheduled operation of [a competitor] inefficient, if not impossible." *Id.*, 138 Colo. at 499, 335 P.2d at 288.

Yellow Cab's interest in protecting its competitive position also reflects its interest as a regulated carrier in continuing to serve the public efficiently and effectively. The ALJ determined that there was a significant public demand for transportation in large vehicles and that removal of the vehicle size limitations initially found necessary for the public convenience and necessity when 191 Corp. obtained its certificate of authority would result in that carrier's ability to transport significantly larger numbers of passengers more efficiently. Under this scenario Yellow Cab's profitability might well be adversely affected. Because such a negative economic impact could impair Yellow Cab's ability to serve the public efficiently and effectively under its own certificate, it was entitled as a regulated carrier to present evidence that its existing service was adequate and that expansion of 191 Corp.'s authority was not required by and would not serve the public convenience and necessity.

C

Our conclusion that Yellow Cab satisfied the statutory requirements for intervention in the proceeding to determine 191 Corp.'s request for different authority is supported by prior decisions of this court. In *RAM Broadcasting*, we recognized that "standing to participate in a PUC proceeding, delineated by statute and rule, differs from standing to bring a lawsuit." *RAM Broadcasting*, 702 P.2d at 749. Quoting the predecessor of section 40–6–109, we explained that the statute "creates two classes that may participate in PUC proceedings: those who may intervene as of right and those whom the PUC permits to intervene." *RAM Broadcasting*, 702 P.2d at 749 (citing *DeLue v. Public Utils. Comm'n*, 169 Colo. 159, 454 P.2d 939 (1969), *cert. denied*, 396 U.S. 956, 90 S.Ct. 428, 24 L.Ed.2d 421). We determined in *RAM Broadcasting* that an existing "tone-only" paging service in Colorado Springs would be affected by a PUC grant of authority to a digital paging service "because a grant would allow additional competition for the ["tone-only"] paging business." *RAM Broadcasting*, 702 P.2d at 749.

Although the issue of standing was not directly addressed in *Public Utilities Commission v. Donahue,* 138 Colo. at 492, 335 P.2d at 285; *Colorado Transportation Co. v. Public Utilities Commission,* 141 Colo. 203, 347 P.2d 505 (1959) (*Colorado Transp. I* ); or *Colorado Transp. II,* 158 Colo. at 136, 405 P.2d at 682, those decisions also support our conclusion that Yellow Cab was entitled to intervene in this proceeding. In *Donahue,* James F. Donahue had been granted exclusive authority to provide for-hire scheduled passenger service between Colorado Springs and its airport. During this same period, however, other carriers, including Pikes Peak Automobile Company, had been authorized by the PUC to transport passengers between the city and the airport on an "on call" basis. Pikes Peak filed an application with the PUC to alter conditions in its PUC certificate that prohibited Pikes Peak from providing scheduled service, establishing rates other than on a round-trip basis, hauling more than a limited number of passengers at a time, or advertising outside El Paso County.

Donahue appeared and protested the application. In affirming a district court judgment holding that the PUC improperly granted Pikes Peak's application, we recognized that the conditions imposed on Donahue constituted "integral parts" of its PUC certificate and "clearly [showed] that the [PUC] was seeking to protect [Donahue] from competition by [Pikes Peak] and twenty or thirty other nonscheduled sight-seeing operators; it sought by limiting the equipment to be used by these operators to prevent the strong from gobbling up the weak." *Donahue,* 138 Colo at 499–500, 335 P.2d at 288–89.

In *Colorado Transp. I,* Checker Cab Company (Checker) filed an application with the PUC to remove conditions contained in its PUC certificate that permitted it to transport passengers for sight-seeing purposes in nine automobiles of a capacity not to exceed seven passengers, with no service by bus. Checker sought authority to utilize buses in its operations. The Colorado Transportation Company, which had been granted authority some thirty years earlier to transport such passengers in multipassenger glass- or open-top buses, protested the application. The PUC granted Checker's application.

In reversing the district court's judgment affirming the PUC's order, we emphasized that Checker had never had the authority it requested and noted the critical relationship of conditions contained in PUC certificates to the ability of carriers to serve the public convenience and necessity, as the following comments reveal:

> The record is devoid of any evidence to indicate that any additional bus service is needed, or that the bus service made available by protestant is inadequate to meet the needs of the public for that type of service—in fact counsel for [the applicant] frankly admit that [the applicant] made no effort to prove public convenience or necessity, but contends that in seeking to use buses instead of automobiles it is only modernizing its equipment and furthering its purpose of transporting sightseeing passengers in conformity with the demands of the public.

*Colorado Transp. I,* 141 Colo. at 206, 347 P.2d at 506.

A few years later, Checker again attempted to obtain PUC authorization to utilize buses. In *Colorado Transp. II,* we reversed a district court judgment affirming a PUC order granting Checker's application. In so doing, we held that the public convenience and necessity did not require such an expansion of Checker's authority and rejected Checker's argument that its application was justified because the public preferred sightseeing from modern glass-top buses to sightseeing from limousines or automobiles. *Colorado Transp. II,* 158 Colo. at 144, 405 P.2d at 686–87.

The PUC argues that these three decisions reflect applications for grants of "new" authority, whereas 191 Corp. seeks no "new" authority because the type of transportation, the scheduled nature of the operations, and the geographic territory served by 191 Corp. pursuant to its initial certificate would not be changed by granting the application. The distinction between "new" and "not new" may be relevant to a final determination by the PUC of whether an application is required by the public convenience and necessi-

ty pursuant to section 40–10–105(1). However, such concern is at best premature in the context of deciding whether a carrier has standing under section 40–6–109(1) to participate in a proceeding to determine the merit of a competing carrier's application to alter its service in the same market. As the dissenting PUC commissioner in this case indicated, in the absence of relevant evidence from carriers serving the same market it would be difficult if not impossible for the PUC to determine if a requested change is justified, regardless of whether the change does or does not constitute "new" authority. The protestors in *Colorado Transp. I* and *Colorado Transp. II* were entitled to participate in those proceedings not because the applicants requested "new" authority, but because the protestors were entitled to introduce evidence to support their assertions that the public convenience and necessity was adequately served by them.

### D

191 Corp. contends that the service contemplated by its application was precisely the same service it provided prior to its application; that Yellow Cab's regulated monopoly status could not be affected by a PUC decision to permit 191 Corp. to operate more efficiently; and that the PUC's denial of Yellow Cab's motion to intervene was therefore warranted. 191 Corp. may be correct in its assertion that approval of its request could not affect Yellow Cab's monopoly position or Yellow Cab's ability to adequately serve the public convenience and necessity under Yellow Cab's PUC certificate. However, as we have indicated, in view of the

significance of the express restrictions contained in the certificates of both Yellow Cab and 191 Corp., the request of 191 Corp. to expand its service, albeit in the name of efficiency, calls into question the adequacy of service provided to the public in the same market by both carriers under their certificates. *See, e.g., Donahue*, 138 Colo. at 499, 335 P.2d at 288 (vehicle capacity limitations in Colorado company's certificate determined to be integral part of restrictions deemed necessary to prevent destructive competition). Yellow Cab's interest in serving the public convenience and necessity under its PUC certificate was sufficiently affected by 191 Corp.'s requested changes to entitle Yellow Cab to participate in the PUC proceeding and present evidence to establish that 191 Corp.'s request was unwarranted.[8]

191 Corp. also asserts that the PUC properly denied Yellow Cab's request to intervene on the ground that granting the request would encourage needless litigation. We reject this argument. Such reasoning introduces an analytical factor that is irrelevant to any determination of a certified carrier's standing to contest an application for alterations to a PUC certificate held by a competing carrier in the same market. Only entities who possess the requisite interest in or are affected by PUC proceedings may intervene in those proceedings. However, entities satisfying the statutory standard for standing to participate in PUC proceedings cannot be denied an opportunity to participate in such proceedings if they so desire. Yellow Cab has satisfied those criteria in the circumstances of this case.[9]

---

**8.** The dissenting PUC commissioner recognized this aspect of Yellow Cab's motion to intervene, as the following statements illustrate:

-While I support the current Commission policy of discouraging groundless and frivolous interventions, I think intervenors' arguments that their interests, particularly the interests of [Yellow Cab's limousine service] were clearly "affected." Because the parties were not allowed to intervene, we cannot know whether or not their interests were affected in a manner inconsistent with the law.

I find unconvincing the argument that interventions were inappropriate since the Applicant was merely requesting authority to economize its service by carrying in one vehicle the number of passengers it previously would have

carried in more than one vehicle. I believe the Commission should have heard the Intervenors' arguments that these so-called efficiency adjustments actually were made to address market needs previously ignored by the Applicant and filled by Intervenors; and, that, in fact, the nature of Applicant's authority was inappropriately changed by this application. PUC Decision No. C91–1629 at 5.

**9.** We express no opinion in this case as to the merits of Yellow Cab's challenge to 191 Corp.'s application. Our decision is limited to recognizing Yellow Cab's right to intervene and participate in PUC proceedings pertaining to this application, and is based solely on Yellow Cab's legitimate interest in the potentially injurious effect on

## III

For the foregoing reasons, we reverse the judgment of the district court and remand the case to that court with directions to vacate the PUC's order and remand the case to the PUC for further proceedings consistent with this decision.

its business of the PUC's decision on 191 Corp.'s request. Whether or not 191 Corp.'s requested modification of its operating authority will actually affect Yellow Cab such that the change is precluded by considerations of public convenience and necessity is a separate and distinct issue that can only be decided by the PUC after reviewing the evidence presented by all interested parties. § 40–6–109(1), 17 C.R.S. (1993).