### No. 25659

**Rocky Mountain Airways, Inc., a Colorado corporation v. Public Utilities Commission of the State of Colorado and Mountain Flying Service, Inc., a Colorado corporation**

(509 P.2d 804)

Decided April 2, 1973. Opinion modified and as modified rehearing denied May 29, 1973.

Schneider, Shoemaker, Wham and Cooke, Robert S. Wham, Elwyn F. Schaefer, for petitioner-appellant.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Irvin M. Kent, Assistant, Eugene C. Cavaliere, Assistant, for respondent-appellee Public Utilities Commission of the State of Colorado.

Stockton and Lewis, John H. Lewis, for respondent-appellee Mountain Flying Service, Inc.

MR. JUSTICE DAY delivered the opinion of the Court.

This is an appeal by Rocky Mountain Airways, hereinafter referred to as Rocky Mountain. Challenged is a Denver district court judgment affirming the Public Utilities Commission (PUC) decision granting Mountain Flying a certificate of public convenience and necessity.

Mountain Flying filed an application for a certificate of public convenience and necessity to operate as a common carrier by aircraft for the transportation of persons and property (except mail) not on schedule but by call and demand, from, to, and between all points in the State of Colorado, with a base of operations at airports in Eagle County and/or Glenwood Springs, Colorado. Protests were filed by Rocky Mountain and by Chatfield Flying Service. Rocky Mountain holds a certificate for identical service, under which it is operating a call and demand authority with bases of operation at Denver and Eagle. It was argued before PUC and here that to grant Mountain Flying duplicate authority would be confiscatory of Rocky Mountain's rights under its operating authorities. Asserting the adequacy of its service, Rocky Mountain argues specifically that the public convenience and necessity does not require the granting of the authority in question.

Protestant Chatfield Flying Service in Glenwood Springs, although not involved in this appeal, also protested the application of Mountain Flying.

Hearings were held before an Examiner, who recommended that Mountain Flying's application be granted in its entirety.

Rocky Mountain filed its exceptions to the recommended decision, which were overruled by the PUC by a two to one vote, Decision No. 79618 entered February 22, 1972. That decision adopted the Examiner's findings.

Rocky Mountain argues two main points: (I) that to grant a competing service the PUC must find — and the record

must support the finding — that there was substantial inadequacy of service on the part of Rocky Mountain at the Eagle county airport; and (II) that the PUC decision tacitly, if not actually, announces a policy departing from the stated law of "regulated monopoly" in Colorado.

We agree and reverse.

I.

We consider the present statutory base of certificates of public convenience and necessity as stating that, where a carrier is already serving, a duplicative operation *cannot* be authorized where the existing service is adequate. The granting of an additional certificate of public convenience and necessity requires a showing that the existing facilities and services are *substantially inadequate*. On the review of such a finding, the district court is limited to the determination of whether or not the PUC regularly pursued its authority and whether the record supported the findings of fact and conclusions of law. *Ephraim Freightways, Inc. v. Public Utilities Commission,* 151 Colo. 596, 380 P.2d 228.

In the PUC's finding is a hazy reference to inadequate service. The statement reads:

"* * * It is also pointed out that those persons testifying for and in behalf of the Applicant corporation made no effort whatsoever to hide or otherwise detract from any operations that might be considered illegal but freely admitted them and in practically every instance those acts of transportation were performed as a matter of grave need, if not absolute necessity, because of the lack of available service out of the Eagle and Glenwood Springs airports which, more than anything points up the inadequacy of existing service."

Generously construing the statement as a finding of fact, there is not sufficient competent evidence to support it.

There is, in the record, no evidence to establish inadequacy of service on the part of Rocky Mountain. There is no evidence of the failure on the part of Rocky Mountain to adequately handle any request for its call and demand service, nor any record or indications of complaints about its

service. It is amply disclosed by the record that Rocky Mountain operates a fleet of five aircraft in its call and demand service, which includes four twin-engine aircraft; it also has sufficient crews to operate them. There was additional testimony that Rocky Mountain has invested substantial capital in aviation facilities and equipment, including its Denver maintenance facilities where all aircraft are based.

What was relied on as competent evidence was public witnesses from the Eagle and Gypsum area who testified that *it would be preferable* or desirable to have an airplane based permanently at the Eagle Airport. Some evidence was presented about time consumption to dispatch an airplane to Eagle on an emergency, but no emergencies were shown to have occurred that could not have been handled by Rocky Mountain. This court said in *Public Utilities Commission v. Weicker Transfer & Storage Co.,* 168 Colo. 339, 451 P.2d 448, that the law could not be stated any better than by the following language which we adopted:

" 'Having carefully examined the record of proceedings, this Court concludes as a matter of law that the record is lacking in competent evidence of *substantial inadequacy* which would lawfully justify the commission in extending the applicant's common carrier operations into the territory being served by the protestants herein. [Citation] The evidence of inadequacy proferred can be characterized as expressions of mere opinion, preference, and desire and willingness to use the services of respondent Acme over the services of protestants, if authority be granted to Acme. [Citations] To permit the decisions in question to stand would constitute an invasion and be destructive of the protestants' rights to engage in the transportation business as common carriers under their respective certificates of public convenience and necessity. [Citation]' "

A very cogent statement of the deficiency in the record to establish the inadequacy of the existing service is found in the dissent of Commissioner Lundborg which we quote:

"The test of adequate service is not perfection and the proof,

to be sufficient, must show inadequacy of present service to be *substantial. Colorado Transportation Company vs. P.U.C.,* 158 Colo. 136; *Ephraim Freightways, Inc., vs. P.U.C., Supra. No* inadequacy *at all* was shown by the record here — substantial or otherwise. This Commission has never indicated by rule or otherwise that the abstract proposition of maintaining an aircraft permanently at each of an operator's authorized bases of operations is an essential ingredient to adequate call and demand service. There was no evidence that the service of Protestant at Eagle has suffered at all by reason of aircraft being dispatched from Denver, rather than being present at the Eagle Airport. Indeed, the majority of the Commission — by adopting the recommended decision of the Hearing Examiner — confirms that a failure to station an airplane at one of the assigned bases of operation of a carrier will not alone constitute inadequacy of service, since the recommended decision of the Examiner authorizes the Applicant to have an additional base of operations at the Glenwood Springs Airport. Applicant's managing officer testified that Applicant would *not* base an airplane at the airport of Glenwood Springs. The majority of the Commission obviously did not consider that that would result in inadequate service."

II.

We feel compelled to state once again that the policy upon which the structure of PUC regulation is based — absent legislative policy to the contrary — is that of regulated monopoly. *Aspen Airways, Inc. v. Public Utilities Commission,* 169 Colo. 56, 453 P.2d 789.

We note that in 1967 Perm. Supp., C.R.S. 1963, 115-9-5(2) the State Legislature announced a policy of regulated competition in the granting or denying of certificates of public convenience and necessity to operate a motor vehicle for hire. By so restricting the statement of policy, the legislature has not changed the settled law as to the structure of PUC power in the remaining areas of regulation. Therefore, the general holding in *Ephraim Freightways, Inc. v. Public Utilities Commission, supra,* as to

common carriers other than by motor vehicle is still controlling. It was therein stated generally:

"This Court has consistently held that the policy of the State of Colorado and the whole theory upon which the structure of Public Utility Commission power is based is that of regulated monopoly. [Citations] In accordance with this theory of regulated monopoly, we have held that a common carrier serving a particular area is entitled to protection against competition so long as the offered service is adequate to satisfy the needs of the area, and no finding of public convenience and necessity for common carrier service is justified unless present service offered in the area is inadequate. [Citations]

"The question involved in the granting or denial of a Certificate of Public Convenience in a particular area is not whether the extent of business in a particular area is sufficient to warrant more than one certified carrier, Donahue v. Public Util. Comm'n, 145 Colo. 499, 359 P.(2d) 1024, but rather whether public convenience and necessity demand the service of an additional transport facility. * * *"

It is to be noted that nothing in the opinion herein is directed to that portion of the PUC decision which permits the operation of a call-and-demand service from the Glenwood Springs airport and airports within a radius of 10 miles thereof. The protestant Chatfield Flying Service, holder of certificate of authority to operate from Glenwood Springs, did not pursue the matter, and there were indications from the record that Chatfield had no equipment and was not actively operating under its certificate. No appeal was taken from the order granting the authority from the Glenwood Springs airport.

The judgment is reversed, and the cause is remanded to the district court with directions to remand to the Public Utilities Commission to amend the Certificate of Convenience and Necessity by deleting therefrom the authority to operate a service from Eagle airport and with base of operations at Eagle airport.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES do not participate.