## No. 27346

**The Atchison, Topeka and Santa Fe Railway Company, and Denver and Rio Grande Western Railroad Company v. The Public Utilities Commission of the State of Colorado, The Board of County Commissioners of El Paso County, Colorado and Sproul Investment Company**

(572 P.2d 138)

Decided November 21, 1977.                    Rehearing denied December 19, 1977.

Grant, McHendrie, Haines and Crouse, Douglas McHendrie, John S. Walker, for plaintiffs-appellees.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Clinton P. Swift, Assistant, for defendants-appellants The Public Utilities Commission of the State of Colorado.

Wilder & Wells, Jeffrey M. Wells, Deputy County Attorney; Quigley & Palermo, P.C., Eugene F. Hart, Jr., for defendant-appellant The Board of County Commissioners of El Paso County.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

This is an appeal by the Public Utilities Commission (PUC) and El Paso County (the county) from a trial court judgment reversing a PUC decision granting the county's application to open a grade crossing of railroad tracks at Bradley Road. We reverse the judgment of the trial court.

In August of 1974, the PUC, upon the county's application, ordered Bradley Road grade crossing closed in order "to promote public safety." Bradley Road is a major thoroughfare in the community of Security, located southeast of Colorado Springs in El Paso County. Before it was closed, this railroad crossing provided direct access to Highway 85-87, the primary route from Security to Colorado Springs. Near its intersection with the highway, Bradley Road crossed railroad tracks owned by the Atchison, Topeka and Santa Fe Railway Company (Santa Fe) and by the Denver and Rio Grande Western Railroad Company (Rio Grande). After Bradley Road crossing was closed, the Rio Grande tracks were removed and both railroads now use the Santa Fe tracks. Construction of the Academy Boulevard overpass provided a separated grade crossing over the railroad tracks and access to Highway 85-87 from Bradley Road via cloverleaf off and on ramps. This overpass was believed to render the

Bradley Road grade crossing unnecessary and also, it was believed that the overpass was a less dangerous route for traffic on Bradley Road.

Eight months after the PUC ordered the Bradley Road crossing closed, the county applied for its reopening because "new facts have come to light which would warrant its reopening." The application set forth that the majority of affected citizens who used Bradley Road desired reopening because entry onto Highway 85-87 from the Academy cloverleaf had been found to be hazardous. Also, it was represented that no major train-automobile accidents had occurred at the Bradley Road crossing after warning devices had been installed. It was further shown that the reopening of the Bradley Road crossing would relieve traffic congestion on the Academy overpass. The railroads protested that a reopening was "unnecessary, economically unjustified, and would create a greatly increased risk of serious accident to vehicles and trains using the crossing."

A PUC examiner held public hearings at which experts and affected citizens testified. Based upon the examiner's recommendation, the PUC ordered the reopening of the Bradley Road crossing for the convenience and safety of the public, and the reinstallation of safety devices. Further, the PUC required the railroads to maintain the devices and to pay ten percent of their installation cost.

The railroads sought review in the trial court, claiming that several of the PUC's findings of fact were unsupported by evidence. In addition, the railroads argued that since they did not benefit from reopening the crossing, it would be unconstitutional to require them to pay for installation of the safety devices at the crossing. The trial court in reversing the PUC order held that:

"It is the conclusion of this Court that the Commission's Order No. 88343 is unjust and unreasonable, is not based on competent evidence, nor is it warranted by the facts, and that the Commission exceeded its authority."

In this appeal, the county and the PUC challenge the scope of review applied by the trial court and claim that the PUC order was just and reasonable, and was supported by the evidence presented before the PUC. From our review of this record, we hold that the appellant's contentions are correct and that the district court's judgment was erroneous.

In enacting the Public Utilities Law, the General Assembly delegated many responsibilities to the PUC, including the power to order the "just and reasonable manner" of the crossing of railroad tracks by any public highway and the power to prescribe the conditions of installing and maintaining such safety devices at the crossings as "appear reasonable and necessary to the end . . . that accidents may be prevented and the safety of the public promoted." Section 40-4-106(2)(a), C.R.S. 1973. Further, whenever the PUC orders the installation of safety devices at railroad crossings, it must order the railroad corporation to maintain the equipment and to pay "not less than ten percent" of the total cost of

installing the safety devices. Section 40-4-106(2)(b), C.R.S. 1973.

### I. *Standard of Review*

■ Judicial review of a final decision of the PUC is governed by section 40-6-115(2) and (3), C.R.S. 1973:

"(2) The findings and conclusions of the commission on disputed questions of fact shall be final and shall not be subject to review, except that, in any proceeding wherein the validity of any order or decision is challenged on the ground that it violates any right of a petitioner under the constitution of the United States or the constitution of the state of Colorado, the district court shall exercise an independent judgment on the law and the facts, and the findings or conclusions of the commission material to the determination of the said constitutional question shall not be final.

"(3) Upon review, the district court shall enter judgment either affirming, setting aside, or modifying the decision of the commission. So far as necessary to the decision and where presented, the district court shall decide all relevant questions of law and interpret all relevant constitutional and statutory provisions. The review shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the decision under review violates any right of the petitioner under the constitution of the United States or of the state of Colorado, and whether the decision of the commission is just and reasonable and whether its conclusions are in accordance with the evidence."

Because the railroads allege that the assessment against them unconstitutionally deprived them of property without due process of law, the district court was required to "exercise an independent judgment on the law and the facts."

■ This standard of review has previously been interpreted by this court in *Public Utilities Commission v. Northwest Water Corp.*, 168 Colo. 154, 451 P.2d 266 (1969) as limiting the district court to an examination of the record to determine whether the conclusions were supported by findings of fact, whether the findings of fact and conclusions were based upon adequate evidence, and whether the commission reached its decision by applying the appropriate constitutional and legislative standards. *See Mountain States Telephone v. Public Utilities Commission*, 182 Colo. 269, 513 P.2d 721 (1973). However, the exercise of discretion and judgment should not be interfered with by the reviewing court. We adhere to the proposition that the legislature contemplated that the reviewing court, since it does not have the aid of a staff and the expertise of the PUC, should not undertake to duplicate the evaluation and judgment processes followed by the PUC in arriving at its decision. *Public Utilities Commission v. Northwest Water Corp., supra.*

■ We conclude that the trial court here exceeded its reviewing powers and substituted its judgment for that of the PUC.

## II. *Findings of Fact and Sufficiency of Evidence*

■ Here, the findings of fact made by the PUC adequately demonstrated which evidence it had accepted as competent and worthy of belief. These findings were sufficient to enable the trial court, as the reviewing court, "to determine whether the Commission has exceeded its jurisdiction, abused its discretion and whether its order and decision is warranted by the facts." *Consolidated Freightways Corp. v. Public Utilities Commission*, 158 Colo. 239, 406 P.2d 83 (1965); *Mountain States Telephone v. Public Utilities Commission, supra. See Aspen Airways v. Public Utilities Commission*, 169 Colo. 56, 453 P.2d 789 (1969).

■ Determination of the constitutional question raised here requires review of the following two findings of fact to ascertain whether they are supported by the record:

"6. The present route of cloverleafing onto Academy Boulevard and then cloverleafing off of Academy Boulevard, . . . presents a hazard to the traveling motorist which would be potentially more dangerous than the reopening of a crossing on Bradley Road provided crossbucks, warning lights and bells and gatearms are installed.

\* \* \* \*

"10. The proposed crossing of Bradley Road over the Santa Fe . . . is in the public interest and should be authorized. Such crossing together with the automatic flashing light signal devices with short arm gates and warning bell will be in the public interest and enhance the public safety."

The legislative standards to be applied by the PUC are that the reopened road must provide a "just and reasonable manner" of crossing the railroad tracks and the installation of safety devices must appear to be "reasonable and necessary" for the safety of the public. We believe the PUC heeded these legislative directives.

■ Competent evidence introduced at the hearing indicated that there were safety problems created by the closing of Bradley Road crossing as well as by the reopening of it, but that much of the danger of the crossing would be reduced by the removal of the Rio Grande tracks and would be further minimized by modifications of the angle of Bradley Road and the tracks, and by the installation of certain safety devices. Although the Academy overpass in providing a separated grade crossing of the tracks, eliminated the danger of train-automobile accidents, the left turn onto Highway 85-87 from the overpass undisputably created other driving hazards. There was testimony that congested traffic patterns which aggravated already dangerous intersections would be relieved by reopening the Bradley Road crossing. Further, "just and reasonable manner" implies that safety need not be the sole consideration of the PUC in deciding to reopen the crossing. The citizens of the area strongly desired the reopening for reasons of convenience as well as safety.

The modifications in the angle of the road and the tracks, none of which will be paid for by the railroads, and the installation of safety devices at the crossing appear to be reasonable and necessary for the safety of the public as required by section 40-4-106(2)(a).

Although some expert testimony uniformly condemned the reopening of the grade crossing, none of these experts had experienced the traffic congestion on the Academy overpass and its hazards. Citizen testimony was equally uniform in favoring reopening the crossing and in criticizing the dangers of the Academy overpass. The findings of fact show that the PUC undoubtedly gave greater credence to the observations of the citizens who, having used the Bradley Road crossing for years before it was closed, had daily contact with the problems created by its closing. Also, the PUC was obviously concerned with the evidence which showed an abnormally high incidence of automobile accidents at a nearby intersection with Highway 85-87 following the closing of Bradley Road crossing. No rule requires the PUC to adhere to experts' opinions if there is other evidence to the contrary. *Cf. Muhe v. Mitchell*, 166 Colo. 108, 442 P.2d 418 (1968).

The PUC was faced with choosing among several alternatives which all presented risks and costs. The record demonstrates that the PUC reached its decision by applying its expertise and judgment to competent and substantial evidence. We conclude that the trial court had no basis to disturb this decision on review. *See North Eastern Motor Freight v. Public Utilities Commission*, 178 Colo. 433, 498 P.2d 923 (1972); *Public Utilities Commission v. Northwest Water Corp., supra; Parrish v. Public Utilities Commission*, 134 Colo. 192, 301 P.2d 343 (1956).

### III. *Constitutionality of Assessment*

Because the decision to reopen Bradley Road crossing was made properly and was supported by the evidence, it was not unconstitutional to require the railroads to pay for ten percent of the cost of installing safety devices at the crossing. By assessing the minimum amount required by law, the PUC apparently recognized that the costs of reopening Bradley Road were due primarily to the county's vacillation. While it is true that the railroads do not benefit from reopening such a crossing, they do benefit from the installation of safety devices on the reopened crossing because the protective equipment significantly reduces the risk of accidents. *See Atchison, Topeka and Santa Fe v. Public Utilities Commission*, 190 Colo. 378, 547 P.2d 234 (1976). The statute unequivocally indicates that a railroad must bear these costs even though the county has requested both the closing and the reopening of the crossing:

"*Whenever* the public utilities commission orders in *any* proceeding before it, *regardless of by whom or how such proceeding was commenced,* that automatic or other safety appliance signals or devices be installed

. . . the cost . . . shall be divided between and paid by the interested railroad corporation whose tracks are located at such crossing on the one hand and the division of highways and the interested city, city and county, town, county, or other political subdivision of the state on the other hand. In determining how much of the cost shall be paid by the railroad corporation, consideration shall be given to the benefit, if any, which will accrue from such signals or devices to the railroad corporation, but *in every case* the part to be paid by the railroad corporation *shall be not less than ten percent of the total cost of such signals* or devices at any crossing, and such orders shall provide that every such signal or device so installed shall be maintained by such railroad corporation for the life of the crossing so protected." Section 40-4-106(2)(b), C.R.S. 1973. (Emphasis added.)

The decision and order of the PUC to reopen the Bradley Road grade crossing had a legally adequate basis in the evidence and therefore the order assessing ten percent of the costs to the railroads is not unconstitutional.

The judgment of the trial court is reversed and the cause is remanded for a trial court order affirming the PUC decision.