**BOULDER AIRPORTER, INC., and American Limousine Service, Inc., Petitioners–Appellants,**

v.

**ROCKY MOUNTAIN SHUTTLINES, INC.; The Public Utilities Commission of The State of Colorado; and The Individual Commissioners Thereof, Robert J. Hix, Christine E.M. Alvarez, and Vincent Majkowski, Respondents–Appellees.**

No. 95SA186.

Supreme Court of Colorado, En Banc.

July 1, 1996.

Berryhill, Cage & North, P.C., Mark W. Williams, Denver, for Petitioners–Appellants.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Merrill Shields, Deputy Attorney General, Richard Djokic, First Assistant Attorney General, J. Bryan Howell, Assistant Attorney General, Regulatory Law Section, Denver, for Respondent–Appellee Public Utilities Commission and the Commissioners thereof.

John W. Rushton, President, Rocky Mountain Shuttlines, Inc., d/b/a Rocky Mountain Supercoach, LTD, Boulder, pro se Respondent–Appellee.

Justice SCOTT delivered the Opinion of the Court.

Petitioners Boulder Airporter, Inc., and American Limousine Service, Inc., (collectively "Airporter")[1] seek review of the district court judgment affirming respondent Public Utilities Commission's (PUC) decision to grant respondent Rocky Mountain Shuttlines, Inc., (Shuttlines) a Certificate of Public

---

1. After commencement of the case below, the Public Utilities Commission (PUC) granted American Limousine Service permission to transfer its authorities to Boulder Airporter, so petitioners are collectively referred to as "Airporter."

Convenience and Necessity (certificate). We affirm the district court's judgment.

## I

On November 17, 1992, Shuttlines filed applications with the PUC for temporary and permanent authority to operate a call-and-demand, door-to-door limousine service from Boulder County to the Denver airport.[2] Airporter intervened on November 30, 1992. The PUC granted Shuttlines temporary authority as a common carrier to operate between points in and around the City of Boulder and the Denver airport. Shuttlines operated pursuant to this temporary authority throughout the PUC's decision-making process regarding the grant of permanent authority.

The temporary authority was subject to certain restrictions against providing services originating or terminating at various locations around Boulder, including certain hotels, motels, and the main campus of the University of Colorado. After a hearing, an Administrative Law Judge (ALJ) issued a decision on December 17, 1993, recommending approval of Shuttlines' application. However, the ALJ found that "since being granted temporary authority applicant has on over 200 occasions violated the express restrictions of that temporary authority." These violations concerned allegations that Shuttlines serviced locations specifically restricted from its temporary authority. Airporter filed exceptions to the ALJ's recommended decision and asked the PUC to reject the recommended decision.

On September 13, 1994, the PUC modified the ALJ's decision and, as modified, denied Airporter's exceptions. Airporter then filed an application for rehearing, reargument, and reconsideration and a motion to reopen the record, which requested the PUC to consider additional evidence. The PUC denied the motion to reopen the record, and on November 2, 1994, it affirmed the grant of authority to Shuttlines. Pursuant to section 40–6–115, 17 C.R.S. (1993), Airporter sought

review of the PUC's decision by filing an action with the District Court for the City and County of Denver. On May 2, 1995, the district court upheld the PUC's grant of authority to Shuttlines, and Airporter filed this appeal.

## II

Section 40–6–115, 17 C.R.S. (1993) provides in pertinent part:

(2) The findings and conclusions of the commission on disputed questions of fact shall be final and shall not be subject to review....

(3) Upon review, the district court shall enter judgment affirming, setting aside, or modifying the decision of the commission.... The review shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the decision under review violates any right of the petitioner under the constitution of the United States or of the state of Colorado, and whether the decision of the commission is just and reasonable and whether its conclusions are in accordance with the evidence.

The PUC's findings are presumptively valid "and must be viewed in the light most favorable to ... [its] decisions." *Colorado Office of Consumer Counsel v. Public Utils. Comm'n*, 752 P.2d 1049, 1055 (Colo.1988). The PUC's findings regarding disputed questions of fact "will not be set aside because the evidence is conflicting, or because conflicting inferences can be drawn from the evidence." *Id.; see also Public Utils. Comm'n v. Weicker Transp. Co.*, 102 Colo. 211, 216, 78 P.2d 633, 636 (1938) ("[C]ourts will not interfere with ... [the PUC's] administrative rulings when they are just and reasonable...."). PUC decisions are made with the agency's considerable expertise and should be accorded due deference. *Integrated Network Servs. v. Public Utils. Comm'n*, 875 P.2d 1373, 1377 (Colo.1994); *see also Public Utils. Comm'n v. District Court*, 163 Colo. 462, 468,

---

**2.** The original application referred to Stapleton International Airport, but on June 21, 1993, additional notice was given to expand the application to include Denver International Airport

(DIA), in light of the imminent closure of Stapleton and opening of DIA. For purposes of convenience we use the term "Denver airport" whether speaking of Stapleton, DIA, or both.

431 P.2d 773, 777 (1967) (noting insufficiency of "mere allegation" of PUC irregularity).

■ Hence, review of a PUC decision is limited "to determining whether the PUC has pursued its authority regularly, whether its decision is just and reasonable, and whether its conclusions are in accordance with the evidence." *Silverado Communication Corp. v. Public Utils. Comm'n*, 893 P.2d 1316, 1319 (Colo.1995). A PUC decision is "in accordance with the evidence" under section 40–6–115(3) if the decision is supported by "substantial evidence." *Ace West Trucking, Inc. v. Public Utils. Comm'n*, 788 P.2d 755, 762 (Colo.1990). Whether substantial evidence exists is a question of law and must be viewed in the light most favorable to the PUC decision. *Id.* Under this standard of review, we are satisfied that there is substantial evidence to support the PUC's decision.

## III

■ The doctrine of regulated monopoly governs the PUC's power to license and regulate motor vehicle passenger carriers. *Yellow Cab Coop. Assoc. v. Public Utils. Comm'n*, 869 P.2d 545, 548 (Colo.1994); *Ephraim Freightways, Inc. v. Public Utils. Comm'n*, 151 Colo. 596, 599, 380 P.2d 228, 230 (1963). Pursuant to this doctrine, an application for authority to operate a motor vehicle service must show "that the public convenience and necessity require such service." *Yellow Cab*, 869 P.2d at 548. However, before making a finding of public convenience and necessity, the PUC must determine that the existing service is substantially inadequate. *Id.; see also Colorado Transp. Co. v. Public Utils. Comm'n*, 158 Colo. 136, 143–44, 405 P.2d 682, 685 (1965); *Ephraim Freightways*, 151 Colo. at 603, 380 P.2d at 232. Shuttlines must also establish its fitness to be a state certified certificate holder. *See Acme Delivery Serv. v. Cargo Freight Sys.*, 704 P.2d 839, 843 (Colo.1985). Discretion rests with the PUC to grant or refuse an application. *Archibald v. Public Utils. Comm'n*, 115 Colo. 190, 193, 171 P.2d 421, 423 (1946).

## A

■ In the present case, the testimony established that Airporter did not offer call-and-demand, door-to-door service until Shuttlines entered the market. Once established, Airporter only provided this service if enough passengers at a particular time justified the trip. The substantial evidence supports the ALJ's conclusion that Shuttlines is the only ground transportation carrier guaranteeing transportation between Boulder and the Denver airport in the same vehicle, at a fixed cost per passenger. The ALJ concluded that "the call-and-demand, single vehicle service of Airporter is substantially inadequate as a matter of law. Indeed, the unrebutted evidence in this matter is that true call-and-demand service from Airporter is so rare as to be non-existent." These factual determinations "are entitled to considerable deference." *G & G Trucking Co., Inc. v. Public Utils. Comm'n*, 745 P.2d 211, 216 (Colo.1987). The substantial evidence supports the ALJ's finding that Airporter's call-and-demand, door-to-door service was substantially inadequate.

## B

A determination of public need for Shuttlines' service is tied to an inquiry into substantial inadequacy. As with the substantial inadequacy of Airporter, the testimony demonstrated a public need for Shuttlines' call-and-demand, door-to-door, same vehicle service. Because the substantial evidence supports the ALJ's finding of need, we will not disturb the PUC's conclusion.

Airporter's objections to the PUC's grant of authority primarily concern Shuttlines' over 200 violations of its temporary authority. Relying on *G & G Trucking, Public Utils. Comm'n v. Verl Harvey, Inc.*, 150 Colo. 158, 371 P.2d 452 (1962), and *Donahue v. Public Utils. Comm'n*, 145 Colo. 499, 359 P.2d 1024 (1961), Airporter claims that a carrier cannot establish a public need for additional service through its unauthorized operations. Therefore, Shuttlines may not support its application using testimony from witnesses that rode the carrier during unauthorized operations. However, concluding that a substantial need existed for direct call-

and-demand service, the PUC specifically stated: "[W]e do not rely on those instances where the service may have been provided in violation of state and federal law." Also, the PUC correctly noted that *G & G Trucking, Verl Harvey,* and *Donahue* are not dispositive of the present case.

In *G & G Trucking,* the PUC made a specific finding "that G & G was conducting its unauthorized operations with reckless disregard for the law." *G & G Trucking,* 745 P.2d at 217. Here, no such finding was made, and evidence of illegal operations was not the only evidence relied upon by the PUC to support its decision. In *G & G Trucking,* the PUC denied an application for an extension of authority, and we concluded that there was substantial evidence to support the agency's decision. In the present case, we are also satisfied that substantial evidence justifies the PUC's decision. Deference to PUC expertise governed *G & G Trucking* and controls the instant case.

In *Donahue,* we stated that *"[a]ll* the evidence before the commission offered for the purpose of proving that the applicant had rendered satisfactory service related to an operation conducted by the applicant without legal authority to operate." *Donahue,* 145 Colo. at 505, 359 P.2d at 1027 (emphasis added). Here, excluding the testimony of illegal operations, the PUC found that "[t]he public need demonstrated by the large number of public witnesses has rarely been observed before by this Commission." The substantial evidence supporting the PUC's decision stands in stark contrast to *Donahue,* where we concluded that there was *"no* competent evidence in the record before us to show need for the additional service by applicant." *Id.* at 508, 359 P.2d at 1028 (emphasis added). Similarly, in *Verl Harvey,* we concluded that there was *no* evidence of public necessity or inadequate service. *Verl Harvey,* 150 Colo. at 168, 171, 371 P.2d at 458, 459. Unlike *Donahue* and *Verl Harvey,*

Shuttlines established the need for its service.

## C

Airporter next contends that Shuttlines is unfit for a certificate because of its history of violating transportation regulations. Again, relying on *Verl Harvey* and *Donahue,* Airporter maintains that the PUC is precluded from issuing Shuttlines a certificate. The PUC found such arguments unpersuasive, and we agree.

Because the PUC possesses special expertise in public utility regulation, "the determination of an applicant's fitness and ability to perform the particular service is the type of decision which is entitled to substantial deference on judicial review." *Acme,* 704 P.2d at 843. We note that the PUC may grant authority to an applicant who has engaged in illegal activities. *Red Ball Motor Freight, Inc. v. Public Utils. Comm'n,* 185 Colo. 438, 444, 525 P.2d 439, 442 (1974). Also, as previously stated, *Verl Harvey* and *Donahue* do not dispose of the present case.

Using its discretion, the PUC determined that the need for direct call-and-demand service took precedence over Shuttlines' violations. While properly holding that illegal activities do not foreclose the issuance of a certificate, the PUC found Shuttlines fit to operate financially and otherwise. The PUC specifically modified the certificate to prevent Shuttlines from usurping Airporter's scheduled service.[3] The PUC emphasized that it "will vigorously pursue to the fullest extent of the law any and all violations of these restrictions or any other rule or regulation of the ... [PUC]." The PUC's enforcement measures include substantial fines and revocation of the certificate. Based on the record and its enforcement authority, the PUC concluded that Shuttlines could be held to comply with the transportation rules and regulations and that the public interest could

---

3. The PUC prohibited Shuttlines from picking up customers within twenty minutes prior to a scheduled stop by Airporter and required that Shuttlines inspect the PUC's files within three days after the beginning of every month to determine Airporter's schedule for the City of Boulder. The PUC also prohibited Shuttlines from picking up passengers from any scheduled Airporter stop without first having received a specific request by a specific passenger for service. In addition, Shuttlines was prohibited from providing service from the Denver airport to Boulder without first receiving a specific demand from a specific customer for service.

be protected. Because substantial evidence supports the PUC's decision, we defer to its expertise.

### IV

Airporter claims that the PUC improperly granted authority beyond the City of Boulder to other parts of Boulder County. However, Shuttlines produced witnesses from outside the city limits that established the need for service in those areas. The substantial evidence supports the PUC's conclusions regarding the scope of the certificate.

Finally, Airporter objects to the ALJ's decision to permit additional, unendorsed public witnesses to testify. However, the PUC held that "[e]ven if we were to disregard the testimony of these new witnesses, we would not alter our decision to issue a certificate in this case." Substantial evidence supports the PUC's grant of a certificate despite the testimony of the unendorsed witnesses.

### V

Accordingly, we approve the district court's judgment to affirm the PUC's grant of a certificate to Shuttlines.