**DURANGO TRANSPORTATION, INC., Plaintiff–Appellant.**

v.

**COLORADO PUBLIC UTILITIES COMMISSION and DSC Purgatory, LLC, d/b/a Mountain Transport, Defendants–Appellees.**

No. 04SA391.

Supreme Court of Colorado, En Banc.

Oct. 24, 2005.

Cage Williams Abelman & Layden, Mark W. Williams, Christian H. Hendrickson, Denver, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Mark Valentine, Assistant Attorney General, Paul Gomez, First Assistant Attorney General, State Services Section, Denver, for Defendant–Appellee Colorado Public Utilities Commission.

Duke Eggleston, General Counsel, Durango, Abel, Band, Russell, Collier, Pitchford & Gordon, Steven H. Denman, Sarasota, FL, for Defendant–Appellee DSC/Purgatory, LLC, d/b/a Mountain Transport.

RICE, Justice.

Appellant Durango Transportation, Inc. (DTI) appeals the judgment of the district court affirming the decision of appellee Public Utilities Commission (Commission) that granted exceptions to the Recommended Decision of the Administrative Law Judge (ALJ) and granted an Application for an Extension of Certificate of Public Convenience and Necessity to appellee, DSC Purgatory, LLC, doing business as Durango Mountain Resort (DMR).[1] The district court concluded that the Commission regularly pursued its authority, that the Commission's decision is just and reasonable, and that the Commission's conclusions are in accordance with the evidence. We affirm the district court's judgment.

## I. Facts and Procedural History

DMR is a ski resort located on Purgatory Mountain, approximately twenty-six miles north of the town of Durango and approximately seventeen to eighteen miles southeast of the Durango–La Plata County Airport (airport). DMR contains 450 rental units, as well as an unspecified number of units occupied by permanent residents. DMR currently holds a Certificate of Public Convenience and Necessity (CPCN) that authorizes it to provide scheduled transportation service between the resort and Durango, with service to intermediate points. Seeking to improve transportation services for its guests, DMR

---

1. The Commission found that Durango Mountain Resort provides transportation service under the name "Mountain TranSport," that DSC/Purgatory is affiliated with Durango Mountain Resort, and that, "[f]or all practical purposes, Durango Mountain Resort is the applicant here."

on September 3, 2002 filed an application for an extension of its CPCN that would extend its authority to include call-and-demand limousine service to passengers between the resort and all points in the counties of La Plata, Montezuma, Ouray, and San Juan.

DTI operates a passenger-transportation service based in Durango and holds a CPCN that authorizes it to provide taxi service, charter service, and call-and-demand limousine service to an area that encompasses the territory that DMR seeks by this application to serve by call-and-demand limousine service. DTI timely intervened to oppose DMR's application, arguing that DMR's proposed extension would illegally interfere with its authority.[2]

On November 19, 2002, a hearing on the application was held before an ALJ. DMR presented eight witnesses, DTI presented five witnesses, and seventeen exhibits were admitted into evidence. After hearing the evidence, the ALJ made fifty-five separate and comprehensive findings of fact and prepared a Recommended Decision. The ALJ concluded that, under the doctrine of regulated monopoly, DMR had failed to demonstrate that DTI's service in the contested area was "substantially inadequate," and therefore recommended that the Commission deny DMR's application. Central to the ALJ's Recommended Decision was its conclusion that DMR had "presented no evidence that [DTI] failed or refused to respond to a service request on more than an occasional basis."

DMR filed exceptions with the Commission pursuant to section 40–6–109(2), C.R.S. (2005), and DTI filed a response to the exceptions. Neither party challenged the ALJ's findings of fact, and the Commission adopted them in their entirety. The Commission, however, disagreed with the ALJ's conclusion that an applicant must prove specific instances of failure or refusal to provide service by the incumbent carrier in order to show substantial inadequacy. Considering "the overall context" of the transportation needs of southwest Colorado, the Commission determined that DTI is not "ready, willing, and able" to meet the area's needs. Therefore, the Commission concluded that DTI's service is substantially inadequate and granted DMR's exceptions and the extension to DMR's CPCN.

The Commission based its decision on a number of factors. First, the Commission determined that the only transportation services available between Purgatory Mountain (including DMR) and Durango are DTI's services, DMR's scheduled service, and private (including rental) vehicles. The Commission found further that, despite "huge growth" in the Durango area—particularly in the tourist industry surrounding Purgatory Mountain and DMR—DTI has failed to make efforts to provide timely and efficient service to these potential customers. In this regard, the Commission noted that in ski season 2001 through 2002, an estimated 20,000 people needed transportation between the airport and DMR. Of this number, DTI transported only 132 people from the airport to DMR and 140 people from DMR to the airport. The Commission also observed that, because DTI's only base of operations is in Durango, which is twenty-six miles from DMR, DMR guests have to wait at least forty-five minutes for call-and-demand limousine service from DTI.

The business that DTI loses through its failure to provide timely and efficient service to these potential customers, the Commission found, "is directly related to the fact that DTI's rates to and from DMR are perceived by the public to be prohibitively expensive . . . ." For a one-way trip for one passenger between DMR and the airport, DTI charges $65; for two passengers, the trip costs $80. For a one-way trip between DMR and Durango for one or two customers, DTI charges $54. The Commission considered the testimony of past and present employees of DMR that DMR guests generally do not use DTI's transportation services and that guests have cited the cost of DTI's services, as well as the

---

2. Another intervenor, Mill Creek Management Co., LLC, initially joined DTI in opposing DMR's application. Later, pursuant to an agreement between DMR and Mill Creek, DMR restrictively amended its application so that it would not interfere with Mill Creek's authority, and Mill Creek withdrew its intervention.

long wait times, as the reasons for their rejection of DTI.

The Commission also concluded that DTI does not have enough vehicles or drivers to serve its service area adequately. DTI's authority covers 7,000 square miles. However, at the time of the hearing, the Commission found that DTI had only four vehicles in operation and two to three drivers working at any given time.

The Commission considered evidence that the lack of timely, efficient, and affordable shuttle service creates safety concerns on Purgatory Mountain. The Commission noted that many visitors to DMR come from out of state and lack experience in mountain driving, that the highway between Durango and DMR is unlit, and that visitors often drive on the highway after consuming alcohol either on the mountain or in Durango. Finally, the Commission noted that La Plata and San Juan Counties have made on-call and shuttle service a requirement for DMR's plans to expand over the next ten to twenty years. Concluding that the inadequacies of DTI's service create a public need for DMR's proposed service, the Commission granted the extension to DMR's CPCN.

DTI filed an application for Rehearing, Reargument, or Reconsideration pursuant to section 40–6–114(1), C.R.S. (2005), which the Commission denied. Thereafter, DTI appealed the Commission's decision to the district court pursuant to section 40–6–115(1), C.R.S. (2005). The district court affirmed the Commission's decision, and DTI now requests that this Court reverse the district court and the Commission.[3]

## II. Analysis

### A. Standard of Review

The standard of review in this case is provided by section 40–6–115, C.R.S. (2005). *See Jarco, Inc. v. Pub. Utils. Comm'n,* 2 P.3d 116, 118 (Colo.2000). Under this section, judicial review is limited to the questions of whether the commission has regularly pursued its authority, including a determina-

tion of whether the decision under review violates any right of the petitioner under the constitution of the United States or of the state of Colorado, and whether the decision of the commission is just and reasonable and whether its conclusions are in accordance with the evidence.

§ 40–6–115(3), C.R.S. (2005). The Commission's findings on disputed questions of fact are final and are not subject to review. *Id.* § 40–6–115(2).

### B. DMR's Application

■■■ The doctrine of regulated monopoly governs motor-vehicle passenger carriers. *Yellow Cab Coop. Ass'n v. Pub. Utils. Comm'n,* 869 P.2d 545, 548 (Colo.1994); *Ephraim Freightways, Inc. v. Pub. Utils. Comm'n,* 151 Colo. 596, 599, 380 P.2d 228, 230 (1963). Under this doctrine, an applicant for authority to operate a passenger service must demonstrate that the public convenience and necessity require the service. *Yellow Cab,* 869 P.2d at 548. When an existing carrier holds authority in the territory the applicant seeks to serve, this requires a showing both that the existing carrier's service is substantially inadequate and that the public convenience and necessity require the service proposed by the applicant. *Id.* An applicant must also demonstrate its fitness to hold the requested authority. *Boulder Airporter, Inc. v. Rocky Mountain Shuttlines, Inc.,* 918 P.2d 1118, 1121 (Colo.1996).

### 1. The Substantial Inadequacy of DTI's Service

■■■ An applicant for passenger-service authority can demonstrate the substantial inadequacy of an incumbent carrier by showing that the incumbent carrier is not "ready, willing, and *able* at all times to render service to anyone who might demand it ...." *Ephraim,* 151 Colo. at 602, 380 P.2d at 232 (emphasis in original); *see also Pub. Serv. Co. of Colo. v. Trigen–Nations Energy Co.,* 982 P.2d 316, 324 n. 9 (Colo.1999) ("A certificate of public convenience and necessity recognizes a right to service the customers of a

---

**3.** This Court has direct appellate jurisdiction of the district court's order pursuant to section 40–

6–115(5), C.R.S. (2005).

certificated region, unless the company is not ready, willing, and able to provide the requested service."). This requires more than a showing that there is "sufficient business to warrant two certified carriers." *Donahue v. Pub. Utils. Comm'n*, 145 Colo. 499, 505, 359 P.2d 1024, 1027 (1961) (internal quotation marks omitted). Moreover, an applicant cannot show substantial inadequacy through "expressions of mere opinion, preference, and desire and willingness to use the services of [the applicant] over the services of" an incumbent carrier. *Pub. Utils. Comm'n v. Weicker Transfer & Storage Co.*, 168 Colo. 339, 342, 451 P.2d 448, 449 (1969). Instead, the applicant must show "a general pattern of inadequate service" on the part of the incumbent carrier. *Ephraim*, 151 Colo. at 603, 380 P.2d at 232. Whether the incumbent carrier's service is substantially inadequate is a question of fact that is to be determined by the Commission. *RAM Broad. of Colo., Inc. v. Pub. Utils. Comm'n*, 702 P.2d 746, 751 (Colo.1985).

■ As noted above, judicial review under section 40–6–115(3) is limited to the determinations whether the Commission has regularly pursued its authority, whether its decision is just and reasonable, and whether its conclusions are in accordance with the evidence. DTI challenges the Commission's conclusion that its service is substantially inadequate on each of these grounds for review.

### a. The Commission Regularly Pursued Its Authority

DTI argues first that the Commission failed to regularly pursue its authority by creating a new standard for substantial inadequacy after the hearing. *See Colo. Mun. League v. Pub. Utils. Comm'n*, 687 P.2d 416, 418–19 (Colo.1984) (noting that the Commission fails to adequately pursue its authority if it does not apply "the relevant legislative standards"). According to DTI, the Commission adopted a "new legal standard, namely that . . . if a carrier does not transport large numbers of people, that carrier does not serve the public need and, therefore, must be inadequate."

However, a review of the Commission's decision reveals that this is not the standard the Commission employed. The Commission made the broader inquiry of whether DTI is ready, willing, and able to provide transportation to anyone who might request it. Moreover, while the Commission did note the fact that DTI serves a very small percentage of its potential customers, this was just one factor among many that led to the Commission's conclusion that DTI is not ready, willing, and able to meet southwest Colorado's transportation needs. As discussed above, the Commission based its conclusion on the facts that the public perceives DTI's rates to be prohibitively expensive, that there is a minimum forty-five-minute wait for DTI's call-and-demand service to DMR, and that DTI does not have sufficient personnel and facilities to serve its 7,000–square–mile authority. Thus, DTI's argument that the Commission adopted a new legal standard must fail.

In connection with its argument that the Commission failed to regularly pursue its authority, DTI asserts that what it terms the Commission's adoption of a new legal standard violated DTI's constitutional right to due process. Citing section 40–6–115(2), C.R.S. (2005), which requires the reviewing court to "exercise an independent judgment on the law and the facts" when "the validity of any order or decision is challenged on the ground that it violates any right of a petitioner under the constitution of the United States or the constitution of the state of Colorado," DTI urges this Court to conduct an independent review of the record.

■ We have previously addressed the scope of review required by this provision of section 40–6–115(2), and we have concluded that the legislature did not intend this section to authorize or require the reviewing court to duplicate the fact-finding and policy-making processes of the Commission. *See Atchison, Topeka & Santa Fe Ry. v. Pub. Utils. Comm'n*, 194 Colo. 263, 267, 572 P.2d 138, 141 (1977); *Pub. Utils. Comm'n v. Nw. Water Corp.*, 168 Colo. 154, 169–72, 451 P.2d 266, 273–75 (1969). Instead, our review under this provision is limited to the inquiries whether the Commission's "conclusions were supported by findings of fact, whether the findings of fact and conclusions were based

upon adequate evidence, and whether the commission reached its decision by applying the appropriate constitutional and legislative standards," *Atchison, Topeka & Santa Fe Ry.*, 194 Colo. at 267, 572 P.2d at 141, and we will not interfere with the discretion and judgment of the Commission, *id.* Having conducted this review, we conclude that the Commission did not adopt a new legal standard for substantial inadequacy and therefore did not violate DTI's constitutional right to due process.

### b. The Commission's Decision is Just and Reasonable

■■■ DTI's second argument is that the Commission's decision with respect to the substantial inadequacy of DTI's services is not just and reasonable. In determining whether a Commission decision is just and reasonable, this Court considers whether the decision is within the Commission's authority and has a rational foundation in the facts. *News & Film Serv., Inc. v. Pub. Utils. Comm'n*, 787 P.2d 169, 173 (Colo.1990). We presume that Commission decisions are reasonable, and when two equally reasonable courses of action are available to the Commission, we will not substitute our judgment for the Commission's. *Contact–Colorado Springs, Inc. v. Mobile Radio Tel. Serv.*, 191 Colo. 180, 183, 551 P.2d 203, 205 (1976).

DTI argues that the Commission's substantial-inadequacy analysis is unjust and unreasonable because it focuses on improper considerations. Specifically, DTI argues that the Commission was not authorized to consider DTI's rates in this analysis. In support of this argument, DTI quotes a concurrence to a Commission decision that denied in part an application for transportation authority where the Commission found that an existing carrier was providing adequate service. That concurrence stated that "it matters not" in the substantial-inadequacy analysis "that a company may offer ... lesser prices." *See In the Matter of the Application of Boulder Express, LLC, Doing Business as Boulder Express Shuttle, for Permanent Authority to Conduct Operations as a Common Carrier by Motor Vehicle for Hire*, Docket No. 02A–412CP, "Order Denying Exceptions," Dec. No. C03–1045, Aug. 13, 2003 (Chairman Sopkin, concurring).

Although an applicant's ability to provide "lesser prices" may not always justify a finding of substantial inadequacy, the Commission acted well within the bounds of justice and reason in considering DTI's rates in this case. The Commission's conclusion was not that DMR could offer "lesser prices" than DTI's, but that "DTI's services are priced so high as to be tantamount to a denial of service to the tourist population requiring transportation to and from DMR."

This conclusion is consistent with this Court's analysis in *Town of Fountain v. Public Utilities Commission*, in which we upheld a Commission decision that granted a portion of one public utility's electrical-service territory to another utility. 167 Colo. 302, 310, 447 P.2d 527, 531 (1968). In upholding the Commission's determination that the inadequacy of the incumbent utility's service justified the transfer of authority, we noted that many residents of the incumbent's territory had no electrical service, that this was because "they could not afford the excessive financial burden of the contributions in aid of construction [of new electrical lines] required by [the incumbent]," and that the contributions required by the incumbent "were so large as to be tantamount to a denial of service to these potential consumers." *Id.* The Commission's conclusion in the instant case that DTI's high rates effectively deny service to potential customers is analogous to our decision in *Town of Fountain*, and this conclusion is therefore within the Commission's authority to interpret the doctrine of regulated monopoly.

DTI attempts to distinguish *Town of Fountain* by noting that in the instant case the Commission, when it granted DTI's authority, approved DTI's rates. DTI's argument is that it is unjust and unreasonable for the Commission to use DTI's rates as evidence of substantial inadequacy when the Commission has previously approved those rates. This argument is unpersuasive, however, because it fails to recognize the difference between the Commission's purposes in regulating common-carrier rates and in granting transportation authority.

The Commission's purpose in regulating rates is "to protect consumers while affording monopoly status to the utility provider." *Pub. Serv. Co. of Colo. v. Pub. Utils. Comm'n,* 26 P.3d 1198, 1204 (Colo.2001). To further this purpose, the Commission endeavors to "set rates which protect both: (1) the right of a public utility company and its investors to earn a rate of return reasonably sufficient to maintain the utility's financial integrity; and (2) the right of consumers to pay a rate which accurately reflects the cost of service rendered." *Colorado–Ute Elec. Ass'n, Inc. v. Pub. Utils. Comm'n,* 760 P.2d 627, 642 (Colo.1988). Thus, the Commission approves rates when they reflect the utility's operating costs plus a reasonable profit. *See also Pub. Serv. Co. of Colo.,* 26 P.3d at 1204–05; *Ohio & Colo. Smelting & Refining Co. v. Pub. Utils. Comm'n,* 68 Colo. 137, 146, 187 P. 1082, 1086 (Colo.1920) ("The unquestioned rule of law is that what the utility company is entitled to demand in the matter of rates, in order that it may have just compensation, is a fair return upon the reasonable value of its property at the time it is being used for the public.").

■ By contrast, the Commission's purpose in granting transportation authority is to ensure that the public's transportation needs are met. *See, e.g., Yellow Cab,* 869 P.2d at 548; *Ephraim,* 151 Colo. at 599, 380 P.2d at 230–31. If the incumbent carrier's rates are so high as to amount to a denial of service, as the Commission found in this case, the Commission must consider this fact in determining whether the carrier's service is substantially inadequate; this is so regardless of the Commission's earlier determination that the rates guaranteed the carrier a reasonable rate of return. To hold otherwise would prevent the Commission from fulfilling its purpose of ensuring· that adequate transportation is available to the public. Therefore, the Commission did not act unjustly or unreasonably in using approved rates as evidence that DTI's services are substantially inadequate.

As a final argument that the Commission's decision is not just and reasonable, DTI contends that the Commission erroneously placed the burden on DTI "to demonstrate it will have other bases of operations, more vehicles, more staff, and additional services ...." This argument mischaracterizes the Commission's decision. The Commission did not place the burden of proof on DTI. Instead, consistent with this Court's case law, the Commission was convinced by DMR's proof of DTI's substantial inadequacy and unconvinced by DTI's attempts to rebut that proof. *See Ephraim,* 151 Colo. at 601, 380 P.2d at 231–32 (noting that where an applicant's evidence tended to prove the existing carrier's substantial inadequacy, "it was incumbent upon [the existing carrier] to rebut this evidence").

### c. The Commission's Conclusions are in Accordance with the Evidence

■ DTI's third argument is that the Commission's conclusions are not in accordance with the evidence. Before addressing this argument, it will be useful to review what Colorado law requires for a decision on substantial inadequacy to be "in accordance with the evidence." A Commission decision is in accordance with the evidence if it is supported by "substantial evidence." *Boulder Airporter,* 918 P.2d at 1121. Substantial evidence "means such relevant evidence as a reasonable person's mind might accept as adequate to support a conclusion ... it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Pub. Serv. Co. of Colo.,* 26 P.3d at 1205 (quoting *City of Boulder v. Pub. Utils. Comm'n,* 996 P.2d 1270, 1278 (Colo.2000)).

The Commission is authorized to consider a broad range of evidence in determining whether an incumbent carrier's service is substantially inadequate. The public-utilities statute provides that "[e]very public utility shall furnish, provide, and maintain such service, instrumentalities, equipment, and facilities as shall promote the safety, health, comfort, and convenience of its patrons, employees, and the public, and as shall *in all respects* be adequate, efficient, just, and reasonable." § 40–3–101(2), C.R.S. (2005) (emphasis added). Consistent with this statute, this Court has observed that "public conven-

ience and necessity may be established by any relevant evidence," *Contact–Colorado Springs*, 191 Colo. at 183, 551 P.2d at 205, and we have expressly approved the Commission's consideration of the incumbent carrier's schedules, the speed and efficiency of its services, and the quality of its facilities, organization, equipment, and personnel. *See Ephraim*, 151 Colo. at 602, 380 P.2d at 232.

In light of this law, we are convinced that the Commission's decision that DTI's service is substantially inadequate is supported by substantial evidence. As discussed above, the Commission relied on the ALJ's fifty-five separate and comprehensive findings of fact, which were based on the testimony of thirteen witnesses and seventeen admitted exhibits. The Commission identified a pattern of serious inadequacy in DTI's service, basing its conclusion on the facts that the public perceives DTI's rates to be prohibitively expensive, that DTI requires at least forty-five minutes to provide call-and-demand service to DMR, and that DTI has insufficient personnel and equipment to serve its extremely large service area.

Despite the several bases for the Commission's conclusion, DTI maintains that it is not supported by substantial evidence. DTI offers several theories in support of this argument. First, DTI argues that the fact that DMR proved few, if any, instances in which DTI failed or refused to respond to a call for service precludes a finding of substantial inadequacy. This is the argument that persuaded the ALJ to recommend that the Commission deny DMR's application. The Commission, however, found this argument unpersuasive, concluding that "DTI's insistence that it 'has always answered the call' for transportation services is rendered meaningless when one considers the unrefuted fact that, at least with respect to a large portion of the public DTI has been granted the exclusive right to serve, very few people are calling."

Neither DTI nor the ALJ was able to point to any rule of law that provides that the Commission may not make a finding of substantial inadequacy in the absence of evidence that the incumbent carrier has failed or refused to provide service to a requesting customer. On the contrary, as discussed above, the public-utilities law authorizes the Commission to consider a broad range of factors in its substantial-inadequacy analysis. Given the deference we accord the Commission's factual and policy determinations, it would be inappropriate for this Court to conclude that one factor—that DMR showed few if any instances of DTI's failure or refusal to provide service—outweighs the several other bases for the Commission's conclusion. *See Pub. Serv. Co. of Colo. v. Trigen–Nations Energy Co., L.L.L.P.*, 982 P.2d 316, 322 (Colo.1999) ("We adhere to the proposition that the legislature contemplated that the reviewing court, since it does not have the aid of a staff and the expertise of the PUC, should not undertake to duplicate the evaluation and judgment processes followed by the PUC in arriving at its decision.") (quoting *Atchison, Topeka & Santa Fe Ry.*, 194 Colo. at 267, 572 P.2d at 141).

Another theory that DTI offers in support of its argument that the Commission's decision is not supported by substantial evidence is that the Commission gave undue weight to the fact that DTI does not maintain a base of operations at DMR. As legal support for this argument, DTI directs the Court to *Rocky Mountain Airways, Inc. v. Public Utilities Commission*, in which this Court overturned the Commission's granting of a CPCN to a common carrier by aircraft after concluding that the Commission erred in determining that the incumbent carrier's service was substantially inadequate. 181 Colo. 170, 176, 509 P.2d 804, 807 (1973). In coming to our holding in *Rocky Mountain Airways*, we rejected the applicant's argument that the incumbent's service was substantially inadequate because it did not have an aircraft permanently located at a particular airport. We quoted with approval a dissenting Commissioner's statement that "[t]his Commission has never indicated by rule or otherwise that the abstract proposition of maintaining an aircraft permanently at each of an operator's authorized bases of operations is an essential ingredient to adequate call and demand service." *Id.* at 175, 509 P.2d at 806.

DTI argues that, just as there was no substantial inadequacy in the incumbent car-

rier's failure to maintain an aircraft at a particular airport in *Rocky Mountain Airways*, there is no substantial inadequacy in DTI's failure to maintain a base of operations at DMR. For two reasons, this argument is unpersuasive. First, the public's needs and expectations with respect to call-and-demand ground transportation from a mountain resort are very different from the public's needs and expectations with respect to transportation by aircraft. Second, and more importantly, our conclusion in *Rocky Mountain Airways* was grounded in the fact that there was no evidence that the service of the incumbent carrier suffered by reason of its failure to maintain an aircraft at the airport. *See id.* at 175, 509 P.2d at 806 (quoting dissenting Commissioner). By contrast, the Commission in the instant case concluded that DTI's failure to maintain a base of operations at DMR contributes to a serious deficiency in DTI's services: the forty-five-minute wait time for call-and-demand service from DMR. Therefore, *Rocky Mountain Airways* does not compel the conclusion that the Commission's decision in this case is not supported by substantial evidence.

██ DTI's final challenge to the sufficiency of the evidence underlying the Commission's decision is that the Commission gave undue weight to hearsay evidence concerning the public's perception of DTI's prices and wait times. Commission hearings are not governed by the technical rules of evidence, § 40-6-101(4), C.R.S. (2005), and this Court has observed that Commission decisions that rely in part on hearsay are not for that reason invalid. *Contact–Colorado Springs*, 191 Colo. at 183, 551 P.2d at 205. The Commission's conclusion with regard to the public's perception of DTI's services was based not only on hearsay, but on DTI's rates and service records, as well as the testimony of a permanent resident of DMR that he would use call-and-demand shuttle service from DMR if it were reasonably priced. "The PUC decides what weight to give to the evidence," *RAM Broad.*, 702 P.2d at 750, and we are satisfied that the Commission's decision is supported by substantial evidence, even if some of that evidence is arguably hearsay.

For the above reasons, the Commission did not err in determining that DTI's service is substantially inadequate.

### 2. The Public Need for DMR's Proposed Service

Along with the substantial inadequacy of the incumbent carrier's service, an applicant for a CPCN must prove that the public convenience and necessity require the applicant's proposed service. *Boulder Airporter*, 918 P.2d at 1121. Because DMR's proposed call-and-demand service is intended to fill the gap left by the deficiency in DTI's service, the Commission's substantial-inadequacy analysis also supports its finding of public need for DMR's proposed service. *See id.* ("A determination of public need ... is tied to an inquiry into substantial inadequacy."). Particularly supportive of the Commission's conclusion that the public convenience and necessity require DMR's proposed service are the facts that 1) of the 20,000 yearly visitors to the Durango–La Plata airport, less than 300 utilized DTI's services for transportation to or from DMR; and 2) the development agreement between La Plata and San Juan Counties and DMR requires the availability of on-call and shuttle service. The Commission did not err in its analysis of the public need for DMR's services.

### 3. DMR's Fitness to Provide its Proposed Service

An applicant for transportation authority must demonstrate its fitness to hold that authority. *Boulder Airporter*, 918 P.2d at 1121. The Commission, after hearing testimony on DMR's access to capital and human resources as well as the fact DMR already runs a scheduled-transportation service, concluded that "DMR is both operationally and financially fit to provide the service it proposes in its application." The Court perceives no basis in the record to disturb this conclusion.

### III. Conclusion

In sum, we conclude that the Commission has regularly pursued its authority, that the Commission's decision is just and reasonable, and that its conclusions are in accordance

with the evidence. Accordingly, we affirm
the order of the district court.